## NEW YORK CENTRAL RAILROAD COMPANY *v.* AMBROSE, ADMINISTRATRIX.

No. 73. Argued January 10, 1930.—Decided February 24, 1930.

& Pac. Ry., 67 I. C. C. 569; Loan to Minneapolis & St. Louis R. R., *ibid.* 580; Equipment Notes of Minneapolis & St. Louis R. R., 70 I. C. C. 67.

Mr. *William H. Carey* argued the cause, and *Messrs. Albert C. Wall* and *John A. Hartpence* were on the brief, for petitioner.

Mr. *A. O. Stanley* argued the cause, and Mr. *Alexander Simpson* was on the brief, for respondent.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is an action under the Federal Employers' Liability Act for the death of John Ambrose, as the result of an alleged negligent failure of the railroad company to furnish a safe place to work.

Ambrose had been employed for many years in a grain elevator belonging to the company and used to facilitate the shipment of grain in interstate commerce. He worked on the "bin floor," which lies above a large number of grain bins, and with each of which it is connected by a circular opening, seventeen inches in diameter, furnished with a spout to carry the grain from the floor into the bin, and by a rectangular manhole, twenty by sixteen and three-quarter inches in size. These openings, when not in use, are closed with metal covers resting on flanges and sunk to a level with the floor.

Ambrose's duties were to sweep the floor, help set the spouts, and generally to do such floor work as his foreman might direct. Sometimes grain became clogged so that it would not run out from the bin; in which event one man would descend into the bin to clean it out, while another lowered and held a light in such position as to assist the former in the performance of his work.

This work was rarely done and only upon an order from the foreman or superintendent.

A short time prior to the accident, with the consent of the superintendent, a representative of a company not connected with the railroad was permitted to make an experiment in one of the bins for the extermination of weevil and other insects, which sometimes got into the grain. This experiment was conducted by mingling with the grain, as it moved through the bin, a powder, which generated a poisonous gas supposed to destroy the insects. In conducting the experiment, forty small bags containing weevil were dropped into the grain. After the experiment, one of the bags which had failed to come through was found lodged within the bin, but it was not intended or thought necessary to remove it. Ambrose was present when the foreman lowered a droplight into the bin and disclosed the bag, and was told by the foreman to keep away from the bin as much as possible, not to "hang around" it, that the gas was poisonous.

The following morning the only men at work on the floor were the foreman, Ambrose, and another employee. Both covers were in place, and Ambrose was engaged in sweeping the floor. The foreman went to another part of the premises, but, about twenty minutes later, hearing a noise "like something hitting," returned to the floor. He then found the covers of both openings off, and an electric droplight hanging through the spouthole into the bin. Looking down he saw Ambrose's body lying at the bottom. There is no evidence to show how the covers were removed or the circumstances under which Ambrose entered the bin and so came to his death.

The case was tried before a state circuit court, and the jury returned a verdict for the respondent, upon which there was a final judgment. Upon appeal to the New Jersey Court of Errors and Appeals, the judges were

equally divided; and the judgment, because of that division, was affirmed.

We are of opinion that there must be a reversal because the evidence fails to establish negligence on the part of the railroad company. That the bin was a dangerous place does not admit of doubt. It contained a poisonous gas of the most deadly character. But of this Ambrose was informed. Not only was there no duty on his part to enter the bin, unless ordered to do so, but he had been specifically told of its dangerous character and warned to keep away as much as possible.

It is said the jury could have found that a signal had been given to get the spouts ready, to which Ambrose responded; or that Ambrose found it necessary, within the scope of his employment while sweeping the floor, to adjust the covers of the openings, and in so doing was overcome by the gas and fell into the bin. But these are mere surmises, not legitimate inferences deducible from the proved facts. Considering the limited size of the openings, it is beyond reasonable belief that Ambrose could have *fallen* through either of them. In the absence of positive evidence to the contrary, the more rational conclusion is that he passed through the manhole by conscious and deliberate effort; and to that conclusion, the fact that the covers of both openings were off, with a droplight hanging through the smaller one, lends a noticeable degree of plausibility. True, in the face of the warning that the bin was dangerous and to keep away from it as much as possible, it is hard to find any good reason for such voluntary entrance on his part; but it is more difficult to account for the tragedy in any other way.

In any view of the matter, the respondent (plaintiff), upon whom lay the burden, completely failed to prove that the accident was proximately due to the negligence of the company. It follows that the verdict rests only

upon speculation and conjecture, and can not be allowed to stand. *C. M. & St. P. Ry.* v. *Coogan,* 271 U. S. 472, 478, and cases cited.

The utmost that can be said is, that the accident may have resulted from any one of several causes, for some of which the company was responsible, and for some of which it was not. This is not enough. See *Patton* v. *Texas & Pacific R. Co.,* 179 U. S. 658, where, at page 663, this court said:

" The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employé to establish that the employer has been guilty of negligence. . . . it is not sufficient for the employé to show that the employer may have been guilty of negligence—the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employé is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs."

It is scarcely necessary to add that a recovery can not be predicated upon the theory that Ambrose, of his own accord, entered the bin. Whatever previously would have been the liability of the company, in virtue of the rule which requires the master to use reasonable care to furnish a safe place to work, there was no liability under that rule at the time of the accident, since, manifestly,

the rule ceases to be operative whenever, and as long as, the place is closed against the servant, and he is authoritatively notified that it is unsafe and warned to avoid it. The master who furnishes the place may, of course, abandon or suspend its use, whenever he discovers that it has ceased to be safe; and a servant, so notified and warned, who ignores the notice and warning, does so at his own risk.

*Judgment reversed.*