**BALTIMORE & O. R. CO. v. TINDALL.**

No. 4439.

Circuit Court of Appeals, Seventh Circuit.

Feb. 9, 1931.

H. W. Mountz, of Garrett, Ind., and Charles D. Clark and Henry D. Sheean, both of Chicago, Ill., for appellant.

Edward B. Henslee and R. C. Parrish, both of Fort Wayne, Ind., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

Accepting the testimony most favorable to appellee, as we are required to do when reviewing the refusal of the trial court to direct a verdict, the following facts are disclosed:

Tindall was a front brakeman working on one of appellant's freight trains engaged in interstate commerce, and he had been so employed for some time. As such employee, it was his duty to ride in the engine cab between stations. A seat was provided for him, the construction of which is shown by the drawing:

On October 29, 1927, while appellee was so riding between two stations, the seat gave way and he fell or slid to the floor of the cab. Appellee testified that the seat was defective in that its regular support (c) was gone and in its place was a wooden stick extending from under the seat to a piece of coal on the floor. When he fell, Tindall had his arm out the window. He stated that he fell "with his left hip down under the side of the seat and his left arm out of the window."

Conceding without deciding that the injury happened in the manner charged, the controversy on this appeal is limited to an ascertainment of whether appellee's alleged injuries resulted from this accident. Appellant disputed (a) appellee's asserted physical condition—that of total and permanent physical disability—and contended further (b) if permanent disability existed, it could not be traced to the fall from the seat. Appellee argued that on both issues a jury question was presented by the evidence.

Respecting the first issue (a) it hardly seems necessary to set forth the evidence. We agree with appellee's counsel that there was evidence to support a finding that after the accident appellee was at times wholly disabled from doing certain kinds of work.

The real controversy, therefore, was over issue (b). Was there evidentiary support for a verdict finding that appellant's negligence was the proximate cause of the injury for which damages were awarded?

The jury must have found that appellee was seriously and permanently injured, for it fixed his damages at $12,500. It must also have found that such serious and permanent injury was the result of the accident. This last statement is made because it is inconceivable that an award of $12,500 would have been made except on the theory that serious and permanent disability resulted from appellee's slipping to the floor of the cab when the seat gave way.

█ The rule governing the quantum of proof necessary to warrant submission to the jury applies to the issue of proximate cause as well as to that of negligence. New York Central R. R. v. Ambrose, 280 U. S. 486, 50 S. Ct. 198, 74 L. Ed. 562.

█ A most thorough examination of the testimony has resulted in the conclusion that the jury was not justified in finding that such injuries were traceable to the fall. Such a verdict, we think, rests solely upon speculation.

Supporting this conclusion is the uncontradicted testimony that appellee never complained of such injuries to any one from the date of the accident, October 29, 1927, until October 19, 1929, when this action was begun. He made no mention either of the seat giving way or of his fall or of any injury resulting therefrom, to the fireman, to the brakeman, or to the conductor, on the day of the accident or at any time thereafter. He performed his duties as brakeman during the remainder of the trip. He "went out on his run" the next day and again performed his duties as a brakeman and he continued to do so for about sixty days. When, sixty days after the accident, he consulted his local physician, he made no mention of this accident as a possible explanation of the rheumatic pains from which he then suffered. In July, 1928, he consulted another physician, but made no mention of this accident. About four months later he again consulted this physician and was taken to a hospital, yet he never mentioned the accident. This physician stated that he examined him the second time on November 4, 1928, and he testified as follows:

"My diagnosis at that time was that he was suffering with intense pain in the hip and muscles associated with the hip and a diagnosis was made of periostitis, which is an inflammation of the periosteum, the covering of the bone. On February 2nd, 1929, we took another ex-ray picture and another was taken on April 2nd, 1930 and another on April 28th, 1930. At the time he entered the hospital he was put to bed and given medicine to relieve the pain. We used the therapy red-ray lamp that generates heat producing rays. This treatment was continued while he was in the hospital, about twelve weeks, that was from November 4th, 1928 until January 29th, 1929. After that I had him purchase one of the red-ray lamps and take his treatment at home."

These X-ray pictures were offered in evidence as were X-ray pictures taken by appellant's witnesses at the time of the trial. Their examination failed to enlighten the court.

Several physicians testified for appellant, and their statement that appellee's leg, left hip joint, and bones of the joint and hip were at the date of the trial (May 12, 1930) in a normal state, is not seriously disputed. These witnesses also stated that they measured the length of each limb, the diameter of the thighs and made other measurements, and found both legs exactly equal. Their statement as to these measurements is uncontradicted. They agreed that "aside from the subjective symptoms, their examination disclosed no evidence of injury." They also stated without contradiction that an absorption of the left head of the humerous, covering a period of two years, would result in some atrophy of the muscles around the hip joint. They likewise testified that rheumatic conditions around the hip joint "may arise from infections in a remote part of the body, in the teeth or bladder or other places."

In reaching our conclusion we have not overlooked the testimony of appellee's physician given in response to a hypothetical question, that appellee's condition at the time of the trial, May 12, 1930, was caused by the injuries received on October 29, 1927. The hypothetical question, upon which the physician based his answer, presupposed the absence of infections or other causes of rheumatic or sciatic nerve inflammations.

█ While it seems to be the common practice in the trial of personal injury cases to submit to an expert witness a hypothetical question based upon one side's theory of the case, the answer to such question is not as satisfactory or as persuasive as it would be if a fairer or more complete statement of the actual facts appeared in the question. Accepting appellee's story of his disability, the court and jury were interested in its cause. Was it of traumatic or rheumatic origin? Was it caused by an injury or by an infection? The expert's opinion to be of value should be in answer to a hypothetical question including the possible causes.

There seems to be some merit in the contention that if injury caused the condition there would have been some physical manifestation of it in the limb or the region of the left hip joint.

Further support for our conclusion is to be found in the testimony of the doctor, who acted as medical examiner of the insurance benefit department of the Baltimore & Ohio Railroad Company. Appellee had been on the insurance disability list of the relief department since December 21, 1927. This insurance department covered both sick and injury benefits. Sick benefits began to run from a date different from that of disability benefits paid because of disability caused by accidents. In applying for benefits because of his disability, appellee never made claim that such disability was due to an injury. Had he done so, his benefits would have been from a slightly earlier date.

We conclude that the evidence tending to show the damages for which appellee recovered was too remote and speculative to justify its submission to the jury. It is not necessary to pass on appellant's other contention that the evidence is insufficient to sustain a finding that the support for the seat was defective.

The judgment is reversed, with direction to grant a new trial.