## SAXON v. ATCHISON, T. & S.˙F. RY. CO.
### No. 2987.

Court of Civil Appeals of Texas.  El Paso.
May 10, 1934.

Rehearing Denied May 31, 1934.

See, also (Tex. Com. App.) 50 S.W.(2d) 1095; (Tex. Com. App.) 59 S.W.(2d) 814.

Walker Saulsbury and Winbourn Pearce, both of Temple, for appellants.

Terry, Cavin & Mills, of Galveston, and Turney, Burges, Culwell & Pollard and A. H. Culwell, all of El Paso, for appellee.

PELPHREY, Chief Justice.

This is the second appeal of this cause, our decision on the first appeal appearing at page 686 of 21 S.W.(2d).

Reference is here made to said decision for a statement of the questions involved on that appeal. It will be seen that the questions there were whether the Railway Company was negligent in permitting the soft area, hole, or depression, to be in the path along the switch track, and whether there was such causal connection between said soft area, hole, or depression and the accident causing the death of Moore upon which to base a finding that the soft area proximately caused him to fall and be injured. We concluded that there was no such causal connection. A writ of error was granted, and Section A of the Commission of Appeals disagreed with our conclusion, reversed our judgment, and affirmed the judgment of the trial court. Saxon v. Atchison, T. & S. F. Ry. Co. (Tex. Com. App.) 36 S.W.(2d) 228. Motion for rehearing overruled (Tex. Com. App.) 38 S.W.(2d) 775. Thereafter a writ of certiorari was issued by the Supreme Court of the United States (284 U. S. 604, 52 S. Ct. 30, 76 L. Ed. 518), and judgment there rendered reversing the Commission of Appeals and ordering the cause remanded for further proceeding not inconsistent with that court's opinion (284 U. S. 458, 52 S. Ct. 229, 230, 76 L. Ed. 397).

In the opinion there appears the following: "Examination of the record convinces us that the Court of Civil Appeals reached the proper conclusion. We can find no evidence from which it may be properly concluded that Moore's tragic death was the result of negligence by the railway company. As often pointed out, one who claims under the Federal Act must in some adequate way establish negligence and causal connection between this and the injury."

Upon the return of the mandate of the United States Supreme Court, Section A of the Commission of Appeals, with the approval of the Supreme Court of Texas, reversed the judgment of both the Court of Civil Appeals and of the district court and remanded the cause to the district court for a new trial.

Upon another trial and at the conclusion of the testimony, the trial judge instructed a verdict in favor of the Railway Company, and this appeal has resulted.

Opinion.

The allegations upon which appellants depend now are: That appellee owned and operated the railroad in question; that the deceased was employed by appellee as a brakeman on its trains; that on the date of his injury, to wit, February 15, 1927, he was engaged in the performance of his work on a side switch or passing track at Tolar, N. M.; that while attempting to board the train for the purpose of flagging an on-coming passenger train on the main line, he was caused to fall under the train and sustain serious injuries which resulted in his immediate death; that it was the duty of the deceased to flag the on-coming passenger train coming from the opposite direction, to prevent said passenger train from running into the freight train upon which deceased was working before all of it had cleared the main track and gotten onto the passing track; that, after he had thrown the switch, and let the freight train head into the passing track, it became his duty to board the train and ride it as it proceeded on toward the further end of the passing track in order to be in a better position to flag said passenger train; that deceased, while walking and running in a pathway wherein trainmen traveled in the discharge of their duties, and by reason of the excessive and dangerous rate of speed of the train, was caused to be thrown under said train and be killed; that in order to flag the passenger train and thereby prevent it from running into the freight train and to prevent the destruction of life and property, it was the duty of deceased to undertake the accomplishment of

his work in the way he did; that this was well known to the employees of appellee in charge of the train and engine; that the employees of appellee knew, or by the exercise of ordinary care would have known, that deceased would have undertaken the discharge of his duties as alleged, and that the injuries to and the death of deceased were directly and proximately caused by the negligence of appellee, its agents and employees in charge of the train and engine, in running and operating the same at a high and excessive rate of speed, in view of the allegations with reference to the duties of deceased.

Appellee pleaded a general denial and that appellants should not recover because the deceased was an experienced employee and understood the dangers of the employment and knew that the passenger train was approaching and that the freight train on which he was a brakeman was taking the siding for the purpose of permitting the passenger train to pass, and knew the character of ground over which he worked and knew the speed of the freight train he attempted to board, and that he exercised his own judgment in that respect and was not called upon to get on the train at the time he undertook to do so; that he voluntarily assumed to get on the train and without necessity; that in making the attempt, he was not in the discharge of any duty he owed to appellee; that deceased assumed the risk and was guilty of such negligence as to preclude a recovery by appellants.

It would serve no good purpose, and would extend this opinion to an unreasonable length, to include herein all of the relevant testimony, and we shall content ourselves by merely stating the substance of what the evidence shows.

The train upon which the deceased was working was a freight train, 110 cars in length, west bound, and had a meet order with east-bound passenger train No. 22, at Tolar. At Tolar there was a passing track about a mile long which was south of the main line. The switch at the east end of the passing track was between 400 and 600 feet from the depot. The deceased opened the switch at the east end of the passing track and then crossed over and stood upon a highway crossing which was a few feet west of the switch while the train pulled into the passing track. The wind was blowing, and the smoke from the engine was blown back along the train on the side where deceased was standing and obscured him from the engineer and the station agent. Lat-

er his body was found at a point west of the depot. Blood was found on the wheels of the thirty-fourth car back of the engine, indicating that it was the one which ran over the deceased.

Only two witnesses testify to having seen deceased immediately before his death, the station agent and a sand and gravel contractor. While there is some confusion in the testimony of the contractor, yet it appears, we think, beyond dispute that both witnesses saw him after he had passed and was west of the depot.

It is agreed that the cause of action here, if any, arises under the Federal Employers' Liability Act (45 USCA §§ 51–59), and it is well settled that one who claims under such act must in some adequate way establish negligence and causal connection between such negligence and the injury. Atchison, T. & S. F. R. Co. v. Saxon, 284 U. S. 458, 52 S. Ct. 229, 76 L. Ed. 397; New York Cent. Railway Co. v. Ambrose, 280 U. S. 486, 50 S. Ct. 198, 74 L. Ed. 562; Atchison, T. & S. F. Railway Co. v. Toops, 281 U. S. 354, 50 S. Ct. 281, 74 L. Ed. 899.

The first question which confronts us, therefore, is that of negligence. Were the employees of appellee negligent in operating the train at the speed they did, which the evidence shows to have been somewhere between 12 and 20 miles per hour? The only fact which would render such speed negligence would be the knowledge that the deceased in discharging his duties would attempt to board the train and that such speed would render the boarding thereof dangerous. They would also be guilty of negligence if by the use of ordinary care they should have known that he would make such attempt.

It was clearly his duty, in the absence of an agreement otherwise, to open the switch at the west end of the passing track in order that his train could get out on the main line again and to flag the on-coming passenger train if his train did not get in the clear in time. In order to perform these duties efficiently and in the customary way, however, he should have boarded the engine of his train or, at least some of the cars near the head end thereof, the record here conclusively showing that in order to properly flag the passenger train he should have been as far as possible up the main line from the switch where his train was passing onto the side track. This being true, then the engineer and fireman had a right to expect that he would board the train near its front

end. The train having stopped before entering the switch at the east end of the passing track, it would have been physically impossible for it to have attained such a rate of speed as to have rendered it dangerous for deceased to board the train, had he attempted to board it near the front end as he should have done to properly discharge his duty.

It follows, therefore, that without some evidence to show that the engineer and fireman knew, or by the use of ordinary care should have known, that he was going to attempt to board the train at a point farther back, they would not be guilty of negligence.

With the statement in the brief of appellants that the employees of appellee knew that deceased was going to attempt to board the train at the time he did, we cannot agree. If he had been engaged in discharging his duties in the customary manner, they certainly would have expected him to board the front end of the train, and we have failed to find anything in the understanding between the deceased and the engineer and fireman, as testified to by them, which will support such statement. Both the engineer and fireman testified that their understanding with deceased was that the fireman was to open the heading-out switch and that he (the deceased) would either come back to the engine over the train or get back to the engine at Taiban while they were taking coal and water.

We have concluded that, the evidence is wholly insufficient to establish negligence on the part of appellee's employees in the operation of the train, and that the judgment of the trial court should be in all things affirmed.