**MASSACHUSETTS PROTECTIVE ASS'N, Inc., v. MOUBER.**

**No. 11553.**

Circuit Court of Appeals, Eighth Circuit.

March 8, 1940.

204

Richard S. Righter, of Kansas City, Mo., and Bailey Aldrich, of Boston, Mass. (F. H.. Nash, of Boston, Mass., and Lathrop, Crane, Reynolds, Sawyer & Mersereau, of Kansas City, Mo., on the brief), for appellant.

Charles N. Sadler, of Kansas City, Mo. (Harold Waxman and David Bresler, both of Kansas City, Mo., on the brief), for appellee.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

The appellant (defendant below) appeals from a judgment in favor of the plaintiff entered upon the verdict of a jury in an action upon a policy issued to Rudolph Mouber, insuring against death resulting from "bodily injuries effected directly and independently of all other causes by accidental means". The plaintiff, who was the beneficiary named in the policy, in her complaint alleged that the insured on December 2, 1937, was driving his automobile "when same accidentally collided with and struck the curbing and another automobile, injuring said Rudolph Mouber to such an extent that he then and there died almost instantly; that the death of said Rudolph Mouber resulted from bodily injuries effected directly and independently of all other causes by accidental means." The defendant, while admitting the death of the insured, denied liability.

On the trial, at the close of the evidence, defendant moved for a directed verdict on the ground that plaintiff had failed to sustain the burden of proving by substantial evidence that the death of the insured resulted from bodily injuries due to an accident, and that the evidence left that issue of fact to speculation and conjecture. The court denied the motion, and the jury returned a verdict for plaintiff. Thereafter, within ten days, pursuant to Rule 50(b) of the Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c, the defendant moved to set aside the judgment and verdict for plaintiff and for the entry of judgment in its favor upon the same grounds as were urged in support of its motion for a directed verdict. The court overruled this motion for judgment notwithstanding the verdict. The principal question presented is the sufficiency of the evidence to sustain the verdict and the judgment appealed from.

The insured, who was fifty-three years of age, died December 2, 1937, in Kansas City, Missouri,. while alone in his automobile. He had been in apparent good health. On the morning of the day of his death, after having his breakfast, he went to his shop near his house; returned to the house, where he hung pictures; and thereafter drove his wife to the City market, where he left her. He was next seen in his car at or near the curb in front of a drug store at 904 Walnut Street. It is upon the testimony of the clerk in that store that plaintiff relies to establish the circumstances surrounding the insured's death. This clerk testified that on the morning in question he was waiting upon two customers (apparently seated at a table in the store); that he had gone to the soda fountain for Coca-Cola, when he noticed the insured, a stranger to him, backing his (insured's) car into an empty space at the curb in front of the store; that as the insured backed the car into this space, the right rear wheel ran up over the curb, which was six or seven inches high, and the car hit the bumper of the car behind it and then went or rolled forward three or four feet and stopped; that the insured's body went back, went forward, and then went back again; that it went back against the seat; that he (the clerk) set his Coca-Colas down and as he came from the table he looked out again and saw the insured, who had his hat back and his head raised up, "go back like that", and that "he kind of opened his mouth like he was kind of choking and trying to get his breath"; that the clerk thought he was the first person to reach the insured; that the insured did not speak; that his body did not move but "just the nerve, just the part of the flesh." An autopsy disclosed that death was due to coronary thrombosis.

The plaintiff's medical expert was Dr. Ginsberg, who testified that in February, 1937, he had examined the insured, who complained of shortness of breath; that the doctor had found him to be overweight, with coronary sclerosis, a pathological condition; that the insured had a little more coronary change than the average man of his age; that he gave him some medicine to dilate the blood vessels; that he instructed him as to diet and told him he should reduce because he was markedly overweight; that the doctor did not regard him as being in immediate danger, but thought that he should watch himself. The

doctor was asked whether, taking into consideration the movements of the car as disclosed by the evidence and the movements of the body of the insured, the condition of his heart, as known to the doctor, and the death of the insured due to a coronary occlusion, the backing of the right rear wheel of the insured's car over the curbing and the striking of the bumper of the car behind the insured's car could have caused his death. The doctor answered that it could. He was then asked whether in his opinion the death was caused by the occurrence described in the evidence. The doctor answered: "That is a hard question to answer. He can walk along the street and die suddenly, but if I might have the privilege of just elaborating a little bit and saying that if I had an accident, if somebody bumped into me, I would be more likely to be killed than if something did not bump into me. Now, I think I have to answer it that way. It may not be just exactly what you gentlemen feel I am answering the question correctly, but I mean, here is what I want to say: People can die suddenly without any cause, demonstratable, anyhow, but we have to assume, at least I as a medical man have to assume, that if there is an element of accident associated with it, it is more likely that that caused his death than not, that that would cause anybody's death than not. Does that answer your question?"

On cross-examination, the doctor testified that he regarded the insured as a seriously sick man, having a damaged heart; that people in his condition might suffer a fatal attack at any time, in bed, in a chair, while walking, or while driving a car, and while engaged in no physical exertion at all. He was asked the following questions and gave the following answers:

"Q. * * * Now, so far as you know anything to the contrary, this man, at the very time he was trying to park this car and ran the wheel up over the curb in his hurry, he may have been suffering from an attack and felt the attack coming on and tried to get out of traffic there? That is entirely possible isn't it? A. Well, he was trying to park the car there.

"Q. I say he may have been having an attack so far as you know at the time he was trying to park the car? A. Oh, yes, he may have been having an attack. I can't say that he didn't.

"Q. No. In other words, if he did run the car up over the curb, and if he did bump the bumper of the car behind, that circumstance may have been the result of this condition rather than the cause of something, isn't that right? A. It might have been.

"Q. With a disease like this he could have keeled over in his car before he ever had a chance to get it parked, couldn't he? A. He might have."

On redirect examination, the doctor reiterated his opinion that the incident described could have caused the insured's death by causing a jerk of his body, and, on recross examination, he was asked the following questions and gave the following answers:

"Q. You don't undertake to say that it did but merely that that is a possibility, isn't that right? A. Yes, that is right, that it could have.

"Q. It might not have been the result of that at all? A. I wouldn't want to say that.

"Q. How? A. I wouldn't want to say that definitely.

"Q. No; nobody knows? That is something you couldn't determine, isn't it? A. That is right."

The testimony of the drug clerk and of the doctor constituted the plaintiff's evidence.

The defendant's evidence did not in any way benefit the plaintiff's case. It corroborated the testimony of Dr. Ginsberg to the effect that the insured was suffering from a dangerous heart condition which might cause his death at any time, and tended to prove that it was unlikely that the incident of the insured's car striking the curb and another car caused his death. It showed that the post-mortem examination of the body disclosed no marks or signs of any injury, and that the cause of death was coronary thrombosis and chronic myocardial infarction.

■ The burden of proving that the insured's death was caused by accident was upon the plaintiff.[1] In determining wheth-

[1] Ocean Accident & Guarantee Corporation v. Moore, 8 Cir., 85 F.2d 369, 374; New York Life Ins. Co. v. King, 8 Cir., 93 F.2d 347, 348; Caldwell v. Travelers' Ins. Co., 305 Mo. 619, 267 S.W. 907, 908, 39 A.L.R. 56; Phillips v. Travelers' Ins. Co., 288 Mo. 175, 231 S.W. 947, 949.

er the evidence was sufficient to prove accidental death, the plaintiff is entitled to have it viewed in the light most favorable to her.[2] But evidence which is consistent with two conflicting hypotheses tends to support neither.[3] If the plaintiff's evidence is equally consistent with the hypothesis that the death of the insured was accidental, and with the hypothesis that it was not accidental, it is insufficient to sustain the verdict and judgment.[4]

 There was no evidence in this case from which it could be determined what the physical condition of the insured was at the time he was attempting to park his car in front of the drug store. The evidence, therefore, is consistent with the hypothesis that the incident of the insured's car overrunning the curb and striking the bumper of a parked car was due to a heart attack, and is consistent with the hypothesis that this incident caused the heart attack. It is as probable that the insured, while driving, had a heart attack or felt a heart attack coming on and was attempting to park his car out of traffic as it is that he brought on the attack by backing his car over the curb and into the parked car. Moreover, if it be presumed that, before attempting to park his car, the insured was not suffering from a heart attack and that some effort or movement of his body brought on the attack, it is not possible to determine from the evidence what particular effort or movement was responsible for it. It is possible that the effort of manipulating the steering wheel in order to park the car may have brought on the attack. It is possible that the insured, in twisting his body to look toward the rear while parking his car may have brought it on, and it is equally possible—as Dr. Ginsberg testified—that the jolting of the body of the insured as the right rear wheel of his car went over the curb and his car struck the car parked behind it may have produced the attack. Under the circumstances, the plaintiff's evidence, viewed in the light most favorable to her, was insufficient to justify a finding by the jury that the death of the insured was accidental. And this is so both under the general law and the law of Missouri. The Missouri rule is that while the evidence of an expert that an act could have caused a certain result is admissible as "an assurance that such a result was scientifically possible", such evidence is not, standing alone, substantial evidence that the act did cause the result, and does not make out a submissible case.[5]

In O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S.W. 55, 61, the court said: "* * In this case, the fact that a cause for which appellant is liable might or could have produced the diseased ulna does not show that a cause for which appellant was not liable did not cause it. In fact, it makes no dif-

2 Svenson v. Mutual Life Ins. Co., 8 Cir., 87 F.2d 441, 442; New York Life Ins. Co. v. King, 8 Cir., 93 F.2d 347, 348.

3 Patton v. Texas & Pacific Railway Co., 179 U.S. 658, 663, 21 S.Ct. 275, 45 L.Ed. 361; Chicago, M. & St. P. Ry. Co. v. Coogan, 271 U.S. 472, 478, 46 S.Ct. 564, 70 L.Ed. 1041; New York Central R. Co. v. Ambrose, 280 U.S. 486, 489, 50 S.Ct. 198, 74 L.Ed. 562; Stevens v. The White City, 285 U.S. 195, 203, 52 S.Ct. 347, 76 L.Ed. 699; Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; United States v. Spaulding, 293 U.S. 498, 505, 55 S.Ct. 273, 79 L.Ed. 617; Ewing v. Goode, C.C., 78 F. 442, 444; Eggen v. United States, 8 Cir., 58 F.2d 616, 620; Deadrich v. United States, 9 Cir., 74 F.2d 619, 622; Connecticut General Life Ins. Co. v. Allen, 8 Cir., 64 F.2d 840, 843; Nicolay v. United States, 10 Cir., 51 F.2d 170, 173; Hirt v. United States, 10 Cir., 56 F.2d 80; United States v. Rentfrow, 10 Cir., 60 F.2d 488; Claywell v. Inter-Southern Life Ins. Co., 8 Cir., 70 F.2d 569, 571; P. F. Collier & Son Co. v. Hartfeil, 8 Cir., 72 F.2d 625, 630; Svenson v. Mutual Life Ins. Co., 8 Cir., 87 F.2d 441, 443; New York Life Ins. Co. v. King, 8 Cir., 93 F.2d 347, 353; A. & R. Realty Co. v. Northwestern Mut. Life Ins. Co., 8 Cir., 95 F.2d 703, 709; Cox v. United States, 8 Cir., 96 F.2d 41, 43; Cupples Co. Manufacturers v. National Labor Relations Board, 8 Cir., 106 F.2d 100, 114; Thomson v. Stevens, 8 Cir., 106 F.2d 739, 742.

4 Svenson v. Mutual Life Ins. Co., 8 Cir., 87 F.2d 441, 443; New York Life Ins. Co. v. King, 8 Cir., 93 F.2d 347, 348; Ocean Accident & Guarantee Corporation v. Moore, 8 Cir., 85 F.2d 367, 374.

5 Kimmie v. Terminal R. R. Ass'n of St. Louis, 334 Mo. 596, 66 S.W.2d 561, 564, 565; Phillips v. Travelers' Ins. Co., 288 Mo. 175, 231 S.W. 947, 949; Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644, 645; Wack v. Schoenberg Mfg. Co., 331 Mo. 197, 53 S.W.2d 28, 31; O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S.W. 55; Scanlon v. Kansas City, 336 Mo. 1058, 81 S.W.2d 939, 941.

ference which expert witness the jury chooses to believe in this case. So far as they can tell from the nonexpert testimony either cause might or could produce the result. The experts are allowed to tell them this, and no more. So far as the testimony goes it does not advise the jury that some other cause might not or could not have caused the result. The injury to the thumb might or could have caused it. Some other cause might or could have caused it. On this record the jury might or could solve the problem solely by guessing."

Since O'Leary v. Scullin Steel Co., supra, it has been held by the Supreme Court of Missouri that an expert may testify that in his opinion a result would be or was caused by the act complained of, without invading the province of the jury, and that such evidence (if credible and based upon a sufficient foundation) constitutes substantial evidence that the result was so caused.[6]

In Phillips v. Travelers' Ins. Co., 288 Mo. 175, 231 S.W. 947, which bears many analogies to this case, the insured died from a cerebral hemorrhage under circumstances from which the court ruled that the jury might infer that he had sustained a fall. The court, however, said, 231 S.W. at page 949: "* * * The fall can be as readily attributed to disease as to accident from the evidence before us, and it devolves on plaintiff to show that it was due to accident."

It also said: "* * * There is evidence that a fall might have caused a rupture of an artery of the brain and brought about the cerebral hemorrhage. None of the physicians undertake to testify as a fact that the hemorrhage was produced by the fall. They simply say that it might have been so produced."

■ The plaintiff argues that if there is a reversal, the case should be sent back for a new trial—citing Slocum v. New York Life Ins. Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879, Ann.Cas.1914D, 1029. Under the rule announced by the Supreme Court of the United States in Baltimore & Carolina Line, Inc. v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636, as implemented by Rule 50(b) of the Rules of Civil Procedure for the District Courts of the United States, the defendant, we think, is entitled to have judgment entered in its favor, the court below having erred in denying the defend-ant's motion for a directed verdict, and having also erred in not granting judgment notwithstanding the verdict. Compare Millers' Mut. Fire Ins. Ass'n v. Warroad Potato G. Ass'n, 8 Cir., 94 F.2d 741, 743.

The judgment appealed from is reversed and the case remanded with directions to enter judgment for the defendant.