BUSSMANN MFG. CO. et al. v. NATIONAL LABOR RELATIONS BOARD.

BUSSMANN EMPLOYEES' ASS'N v. SAME.

Nos. 447, 459.

Circuit Court of Appeals, Eighth Circuit.

May 14, 1940.

WOODROUGH, Circuit Judge, dissenting.

George B. Logan, of St. Louis, Mo. (William H. Armstrong and Cobbs, Logan, Roos & Armstrong, all of St. Louis, Mo., on the brief), for Bussmann Mfg. Co. and McGraw Electric Co.

Isaac C. Orr, of St. Louis, Mo., for Bussmann Employees' Ass'n.

Alvin J. Rockwell, of Washington, D. C. (Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, Laurence A. Knapp, Asst. Gen. Counsel, and Allen Heald and Owsley Vose, all of Washington, D. C., on the brief), for respondent.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

These are separate petitions filed in this court for a review of an order of the National Labor Relations Board. The petitions refer to the same order, and the cases may conveniently be disposed of in a single opinion.

The petitioner in No. 447, hereinafter referred to as the employer, is a corporation engaged in manufacturing electrical appliances at two plants situated in the City of St. Louis, Missouri. The petitioner in No. 459 is an independent union among the employees of the petitioner in No. 447. For brevity the petitioner in No. 459 will be referred to as the Association. The Association was permitted to intervene in the proceedings in which the employer was charged with unfair labor practices in violation of the National Labor Relations Act. 49 Stat. 449, 29 U.S.C.A. § 151 et seq.

The petitioners seek a decree setting aside certain designated parts of the order, and the Board requests enforcement of its order. Jurisdiction of the Board and of this court is conceded, and there is no objection to the proceedings preliminary to the order.

That part of the order complained of directs the employer, (1) to cease and desist from discouraging membership in, and from refusing to bargain collectively with, the International Association of Machinists, District No. 9 (hereinafter referred to as the Local), as the exclusive representative of the tool and die makers and apprentices, and from in any manner interfering with, restraining, or coercing employees in the exercise of their right to self-organization; and (2), affirmatively, (a) upon request to bargain collectively with the Local and (b) to reinstate with back pay Likert and Hogge, two employees found by the Board to have been discharged because of their union activities.

The cease and desist part of the order is not resisted on the ground that the finding of the unfair labor practices charged in the complaint is not supported by substantial evidence. The contentions of the petitioners are (1) that the tool and die makers are not such a segregated group as to constitute a proper unit for collective bargaining; (2) that the order requiring the employer to offer to bargain collectively with the Local is illegal and beyond the jurisdiction of the Board because its enforcement will interfere with an existing contract between the employer and the Association, which claims to represent a majority of all the employees at the two plants; (3) that the discharge of Likert and Hogge was justifiable and the evidence does not support the finding that they were discharged because of their union activities; and (4) that the Board erroneously

found that the Local represented a majority of the tool and die makers at the time of the hearing before the Board.

1. Section 9 of the Act commits to the Board the power to determine the appropriate unit for collective bargaining in each case; and, unless the decision of the Board is arbitrary and unreasonable, it is binding upon the court on review. National Labor Relations Board v. Lund, 8 Cir., 103 F.2d 815; National Labor Relations Board v. Carlisle Lumber Co., 9 Cir., 94 F.2d 138; International Ass'n., etc., v. National Labor Relations Board, App.D.C., 110 F.2d 29, 46. The finding of the Board is supported by substantial evidence. It is not, therefore, arbitrary. The evidence shows that the tool and die makers have long been regarded as a separate craft with a unity of interest all their own. Their duties require skill, and they perform a class of work different from that of the other employees. They were separately organized long before the Association came into existence.

2. The claim that the enforcement of the order will impair the obligations of the contract existing between the employer and the Association is without merit. The order is not directed to the Association, but only to the employer. The Board recognized the existence of the contract and found that it "does not specifically relate to the working conditions of the tool and die makers and the apprentices", and that it is no bar to bargaining between the local and the employer. It is not denied that the local represented a majority of the tool and die makers and the apprentices at the time the employer refused to bargain collectively with them. That was an unfair labor practice, and the making of a contract subsequently with the Association does not relieve the employer from the consequences of its refusal. National Licorice Company v. National Labor Relations Board, 60 S.Ct. 569, 84 L.Ed. —— (decided March 4, 1940). If the tool and die makers and apprentices desire to recognize the Association instead of the Local as their bargaining representative the order does not prevent them from doing so. The order preserves for them the right of choice under section 9 of the Act after the coercive influence of the unfair labor practices of the employer has been removed. In so doing it seeks to enforce the public policy declared by Congress in the Act prior to the inception of the contract with

the Association. Under these circumstances neither the employer nor the Association has a right to complain.

3. Likert and Hogge were tool and die makers in the St. Louis plants of the employer. They were both charter members of the Local. They were both discharged June 23, 1937. The Board found that they were discharged because of their union membership and activities and ordered their reinstatement with back pay. The employer says the evidence does not support the finding upon which the order rests, and that the only inference warranted by the testimony is that they were both discharged for disobedience to orders.

In some respects the facts in the two cases are the same while they differ in other particulars. Hogge and Likert were the only charter members of the Local at the time they were discharged. The Local was the oldest union organization among the employees at the plants. In the spring of 1937 there were eight tool and die makers at the plant and five apprentices. Ten of these were members of the Local and the others had applied for membership. The Local applied to the employer for recognition as the exclusive agency for collective bargaining for the tool and die makers and sought to negotiate a contract covering various conditions of employment. Both Likert and Hogge participated in these negotiations. Their efforts were unsuccessful and in May, 1937, the employer finally refused to recognize the Local.

Meanwhile the Association was in process of organization, and on June 17, 1937, the employer and the Association entered into a contract relating to conditions of employment. In this contract the Association purports to represent all the employees in the plants including the tool and die makers.

In the organization of the local and in soliciting members for it Likert took an active and aggressive part. Hogge was not active, but maintained his membership and remained loyal to it.

The circumstances in connection with the discharge of the two men are not identical, although the discharges occurred at the same time and for the same alleged reason. The testimony, viewed in its most favorable light to support the findings of the Board, discloses that at about 5 or 10 minutes before quitting time on Tuesday June 22, 1937, Butler, Hogge's foreman, notified him that he would be expected to work overtime that day. He informed Butler that he had something else to do. Butler made no reply. Hogge assumed that Butler assented to his going and accordingly punched his card and left the plant at 5 o'clock. He passed Butler on his way out, and Butler said nothing to him.

Hogge went to work at the usual hour the next morning and about two hours later Butler and Joe Bussmann approached him. Bussmann asked Hogge if Butler had requested him to work the night before and if he had refused. Hogge admitted that Butler had requested him to work but denied that he had refused. When he tried to explain Bussmann cut him off and discharged him.

Hogge during the course of his employment had never violated any rule of the employer. A few days before these occurrences he had been asked to work overtime and had been excused upon request. Butler testified: "We never insisted they (the employees) should work if they said they had to go some place, or any thing. They didn't have to have much of an excuse, most anything was good enough."

There is substantial evidence to support the finding of the Board that Hogge was not discharged because he had failed to work overtime, and that such claim is a mere pretext. Under these circumstances the Board was warranted in drawing the inference that Hogge was discharged because of his union membership and activities. The evidence discloses no other motive on the part of the employer. If the trial were to a jury the evidence is such that the court would be compelled to submit the question of the employer's motive to their determination. National Labor Relations Board v. Columbian Co., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660. Refusal to bargain collectively with a union is sufficient, in the absence of any other satisfactory reason, to sustain a finding of discrimination in the discharge of an employee. National Labor Relations Board v. Kentucky Fire Brick Co., 6 Cir., 99 F.2d 89.

Likert's case differs from Hogge's in that when he was requested to stay and work overtime he said that he "would plan to work that night." On Tuesday evening, however, at a few minutes after quitting time, without saying a word to anyone, but in view of Butler, he walked out and went home. This conduct was ground to warrant the discharge of

Likert and, standing alone, to support the employer's claim that this was the basis of its motive for discharging him. This situation left the question of the reason for the discharge in the realm of speculation. It is not sufficient to show merely that the employer may have discharged Likert on account of his union activities—the evidence must point to that fact. When the testimony shows, as it does here, that the cause of the discharge may have been one of two things, one of which was illegal and the other legal, the fact finding tribunal can not guess between the two causes and find that union activities was the real cause when there is no satisfactory foundation in the testimony to support the conclusion. Patton v. Texas & Pacific Railway Co., 179 U.S. 658, 663, 21 S.Ct. 275, 45 L.Ed. 361. When evidence is consistent with either of two inconsistent hypotheses it establishes neither. Stevens v. The White City, 285 U.S. 195, 204, 52 S.Ct. 347, 76 L.Ed. 699; New York C. R. Co. v. Ambrose, 280 U.S. 486, 490, 50 S.Ct. 198, 74 L.Ed. 562. Under these circumstances, had the case been tried to a jury, it would have been the duty of the trial judge to direct a verdict for the defendant. Chicago, M. & St. P. Ry. Co. v. Coogan, 271 U.S. 472, 478, 46 S.Ct. 564, 70 L.Ed. 1041; Massachusetts Protective Ass'n v. Mouber, 8 Cir., 110 F.2d 203, 206. Proof of mere sequence is not sufficient to establish consequence or causal sequence. A post hoc ergo propter hoc is sound neither in logic nor in law. Had there been evidence that the employer sometimes or often had discharged employees for union activities, or had there been other substantial evidence to show that it was highly probable that the discharge was the result of union activities the Board's conclusion could be sustained. Wigmore: Principles of Judicial Proof, p. 20, § 4(a). But no such probative circumstances are in evidence. It is in this aspect of the matter that the cases of Hogge and Likert differs. The evidence as to Hogge's refusal to work overtime is such that the Board was warranted in finding that he did not so refuse and that the accusation was a mere pretext of the employer; whereas, the evidence that Likert refused to work was without dispute. His conduct would have justified his discharge had there been no labor controversy in progress. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45, 46, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Link-

Belt Co. v. National Labor Relations Board, 7 Cir., 110 F.2d 506, 512. In such a case the union activities of the employee alone in the promotion of a union to which the employer is hostile will not support the finding that he was discharged because of such union activities. Burlington Dyeing & Finishing Co. v. National Labor Relations Board, 4 Cir., 104 F.2d 736, 739; National Labor Relations Board v. Thompson Products, 6 Cir., 97 F.2d 13, 17; National Labor Relations Board v. Empire F. Corporation, 6 Cir., 107 F.2d 92, 95; Agwilines, Inc., v. National Labor Relations Board, 5 Cir., 87 F.2d 146, 147. The order to reinstate Hogge should be enforced, and the order to reinstate Likert should be denied.

The employer objects to that part of the order which directs that Hogge be made whole for any loss of pay suffered by him by the discharge by paying to him a sum equal to that which he would normally have earned as wages from June 23, 1937, the date of his discharge, to the date of the offer of reinstatement, less his net earnings during that period. The objection is made on the ground that the Board did not find that Hogge has not found substantially equivalent employment in the same community at the same vocation and at substantially the same rate of pay. The order is not fairly subject to this criticism. The Act provides that the term employee means among other things one "who has not obtained any other regular and substantially equivalent employment." 29 U.S.C.A. § 152(3). And the Act gives to the Board power in case an employee is discharged as a result of an unfair labor practice to order reinstatement "with or without back pay." 29 U.S.C.A. § 160(c).

The Board found that Hogge was unemployed after the date of his discharge on June 23, 1937, until September, 1937. At that time he worked 40 hours as a tool maker in Evansville, Indiana, at a rate of one dollar an hour. He left this job and was without work until October 4, 1937, when he secured work in St. Louis at 82 cents an hour for a 40-hour week. At the time of his discharge he was earning one dollar an hour. His employment has not been regular nor substantially equivalent since his discharge. The court can not modify the order. The determination that he should be made whole was committed to the discretion of the Board by the Act, and the findings support the order.

4. Finally, the petitioners assert that the Local was not at the time of the hearing and is not now the choice of a majority of the tool and die workers. It is conceded that at the time of the unfair labor practices in May, 1937, 10 of the 13 tool and die makers were members of the Local. At the time of the hearing it is claimed there were only 5 of the 13 employed still members of the Local; and in its brief the employer informs the court that but one of the tool and die makers now belongs to the union. This statement in reference to the present situation cannot be considered by the court. "The case must be heard on the record as certified by the Board." National Labor Relations Board v. Newport News Shipbuilding & Dry Dock Co., 308 U.S. 241, 249, 250, 60 S.Ct. 203, 208, 84 L.Ed. ——. The evident purpose of this ex parte statement as shown by the brief is to persuade the court to remand the case to the Board to take further testimony upon this question or to condition an affirmance upon an election among the employees, as was done by the court in Hamilton-Brown Shoe Co. v. National Labor Relations Board, 8 Cir., 104 F.2d 49. The present case is distinguishable from the cited case. In that case the assertion of a change in the majority had been made before the Board before its order was entered. In the instant case the claim is made for the first time in the brief.

The circumstances with reference to a change in majority at the time of the hearing presents a different situation. Of the ten members of the Local in May when the employer refused to bargain with them one had quit at the time of the hearing, two had withdrawn and two, Hogge and Likert, had been discharged. Hogge's discharge, as we have seen, was found to be wrongful and the employer has been ordered to reinstate him. The Board found that the unfair labor practices tending to discourage membership in the Local brought about the change in membership in the Local. Of the five new employees none had joined.

Membership in a union with which the employer refused to bargain collectively and toward which it was hostile could be of little value to its members. We do not think it has been shown that the majority at the time of the unfair labor practices would not have continued had it not been for the illegal and wrongful conduct of the employer. "An employer should not be allowed to discredit a bargaining agent selected by an overwhelming majority of his employees by refusal to bargain with it and then take advantage of the loss of membership due to his wrongful act as an excuse for refusing to recognize it as a bargaining agent." National Labor Relations Board v. Highland Park Manufacturing Company, 4 Cir., 110 F.2d 632, 640; International Ass'n, etc., v. National Labor Relations Board, supra. The enforcement of the order can effect no wrong. If there has in fact been a change of sentiment among the tool and die makers so that at present a majority opposes the Local their rights can be protected under section 9 of the Act. If a majority are loyal to the Local they will be free to assert their preference after the coercive influence that has heretofore discouraged them is removed.

The order is affirmed and a decree will be entered enforcing it, except that part of paragraph 2(a) and (b) relating to the reinstatement of Roland Likert and the restoration of his pay.

Affirmed in part.

WOODROUGH, Circuit Judge (dissenting).

I concur in all of the majority opinion except the reasons given for refusing to enforce the Board's order to reinstate the discharged workman Likert. There was some evidence that Likert had committed a fault. The relation of the fault to the discharge was equivocal as it was committed in the presence of his foreman who apparently acquiesced at the time. The examiner thought that discharging the man was not an act of discrimination on account of his union activities. The Board found that it was. I think the evidence is such that some honest persons would honestly believe that it was and others might honestly believe that it was not. There was a question of fact which it was the sworn duty of the Board to determine. I dissent from the court's conclusion that the claims made by the company threw the issue into the field of speculation or conjecture or justify the court's refusal to adjudicate squarely upon the fact issue whether there was or was not discrimination in the act of discharging Likert.

Heretofore the effective way to prevent the unionizing of an industry has always been for those in control to cause the dis-

charge of any ringleaders who attempted to organize their fellow workmen. That course was legally open to all employers and was followed by those opposed to having their plants unionized. The Wagner Act denounces it as an unfair practice. Since then the idea has been seized upon that the Act can be aborted if any·kind of a fault can be shown on the part of a workman who engages in union activities. There is no human being in the industries utterly blameless or without fault and the idea is fallacious. Judicial sanction given to it will obstruct enforcement of the legis· lative will expressed in the Wagner Act, and as I think the court's reasoning relative to the discharging of Likert tends to give such sanction I can not concur in it.