## THE CATALONIA.

## THE REBECCA A. TAULANE.

*(District Court, D. Massachusetts. April 18, 1890.)*

1. COLLISION—FOG—NEGLIGENCE.
    A steamer running at the rate of more than seven knots in a fog so dense that a ship can hardly be seen at the distance of a ship's length is guilty of negligence.
2. SAME—FOG-HORN.
    A sailing vessel which uses a fog-horn sounded by the breath instead of one sounded by a bellows, as required by article 12 of the sailing regulations, is guilty of negligence.

In Admiralty. Cross-libels for a collision between the Cunard steamer Catalonia and the schooner Rebecca A. Taulane.

*George Putnam,* for the Catalonia.

*E. P. Carver,* for the Rebecca A. Taulane.

NELSON, J. This collision happened about 30 miles north-east of Highland light, in a thick fog, on the morning of July 14, 1889. The Catalonia was bound on a voyage from Liverpool to Boston, and was heading due west for Boston light. The Rebecca A. Taulane was pursuing a voyage from Richmond, Me., to Philadelphia, with a cargo of ice. She was sailing on the starboard tack, close-hauled, steering a south-westerly course by the wind. At about 8:30 o'clock the sound of a fog-horn was heard on the steamer, and at the same moment the schooner was seen through the fog by the lookout on the starboard bow, and reported. The order was immediately given from the bridge to put the wheel to starboard, but before the order could be executed it was changed, and the wheel ordered hard a-port, and the engines reversed at full speed. The steamer struck the schooner on the port side, just forward of the main rigging, cutting into her half the width of the deck. The schooner was afterwards taken in tow by the steamer, but, the hawser parting, her men were taken on board the steamer, and she was abandoned. She was afterwards picked up by another steamer, and towed into this port. She has since been libeled for salvage. The iron plates in the stern of the steamer were broken and bent by the collision. The fog signals of the steamer were heard to leeward by the men on the schooner for some minutes before the collision. The schooner made no change of course.

Both vessels must be held in fault for the collision,—the steamer for not going at a moderate speed in the fog, and the schooner for not having on board, and for not sounding, a fog-horn of the class prescribed by the sailing regulations. The master of the steamer deposed that the steamer's speed did not exceed 5 or 6 knots, and it was argued that under the circumstances such a rate of speed was not immoderate. But the estimate of the master was disproved by the entries made at the time in the log kept in the engine-room. Full speed of the steamer was 12 knots, and according to the testimony of the engineer this was attained

with 60 revolutions of the propeller. The engineer's log shows that the ship was running with 44 revolutions, or at half speed, and it was testified that half speed was 7 knots. This must mean merely an estimated average half speed, since 44 revolutions would indicate nearly 9 knots. As the wind was light and the sea smooth, the ship was probably making much more than 7 knots. But if no more than 7 knots in a frequented part of the ocean, and in a fog so thick that a ship's hull and sails could not be seen hardly more than a ship's length distant, that was clearly excessive. *The Martello*, 34 Fed. Rep. 71.

Article 12 of the sailing regulations provides that a steam-ship, besides her steam-whistle, shall be provided with an efficient fog-horn, to be sounded by a bellows or other mechanical means, and that a sailing ship shall be provided with a similar fog-horn, and that a sailing ship under way shall make with her fog-horn, at intervals of not more than two minutes, when on the starboard tack, one blast; when on the port tack, two blasts in succession; and when with the wind abaft the beam, three blasts in succession. The fog-horn on the schooner was a common horn, sounded by the breath. She did not have on board, and therefore did not blow, a fog-horn, sounded by a bellows or other mechanical means. The argument of the learned proctor for the schooner failed to convince me that the human lungs are an equivalent for the bellows. I have already decided in two cases before this that neglecting to sound the regulation fog-horn in a fog was a fault on the part of a sailing ship, unless it is shown with certainty that the omission could not have caused the collision. I quote, as applicable to the present case, the apt language of Judge LOWELL, in a case arising under the old rules, where a sailing ship omitted to show a torch:

"Congress has refused to relieve steam-ships of the burden of avoiding sailing ships, however difficult it may be for large steamers to be handled readily, and however easy for some light sailing craft; but they have imposed upon the latter the duty of giving notice of their presence by certain definite means. We are bound, therefore, to believe that the exhibition of a torch is useful under ordinary circumstances. Experts may perhaps be found to testify that a moderate speed is harmful, a fog-horn useless, and a torch actually misleading, but the statute must be obeyed. *The Hercules*, 17 Fed. Rep. 606."

In this case the schooner's fog-horn was not heard on the steamer until the very moment she came in sight. A regulation fog-horn, which must be supposed to give a louder blast, might, and probably would, have been heard sooner, and the accident have been prevented. It was argued for the schooner that the steamer should have held to her starboard wheel, and not ported, and for the steamer it is argued that the schooner should have come up into the wind when she heard the steamer whistle to leeward; citing *The Zadok*, 9 Prob. Div. 117. The disposition of the case upon other grounds renders it unnecessary to decide either of these points; but neither of them appears to have much force. Decree for libelant on both cases, damages to be divided.