It is sufficient to refer to the case of Cæsar v. Capell, 83 Fed. 403, to the judgment of the court upon the effect of the filing of the charter with the secretary of state and the abstract thereof on August 11, 1893, subsequently to the making of the contract, and prior to the passage of the curative act of May 10, 1895. We there held that a compliance with the statute prior to the act of 1895 was, in itself, a sufficient filing, which removed whatever infirmity there was in the contract; and therefore it might be enforced by the courts without regard to the act of 1895 subsequently passed. It was there said:

"The infirmity which existed before that time was that the courts of Tennessee, state and federal, if you please, would not enforce a contract made in disobedience of the statute; but whenever that disobedience was removed, and the parties complied with the conditions, there was no longer any substantial reason why the courts should not enforce it. Any reason that might be assigned for not enforcing it would be neither within the mischiefs to be remedied by the statute nor within the enforcement of any policy declared by it, but purely and entirely sentimental; the sentiment being that the contract, having been originally made in disrespect of the statute, should be forever disfavored by the courts and repelled from their precincts, until the legislature had granted a statutory pardon. We think it will be found that courts do not proceed upon any such theory unless the infirmity inheres in the vicious, immoral, or criminal nature of the act itself."

This still seems to me quite a substantial answer to the defense that has been set up in this suit. The result is that the plaintiff is entitled to a decree for the collection of its debt and the foreclosure of its mortgage, and the usual decree for that purpose will be drawn and entered. Decree accordingly.

---

## THE META.

(District Court, E. D. New York. June 21, 1898.)

NEGLIGENCE—PERSONAL INJURIES—PRESUMPTIONS.

In a libel in admiralty to recover for personal injuries, where the evidence is such as to leave the circumstances and cause of the injury so uncertain that the court can give no logical reason for determining the issue in libelant's favor, the presumption that the person charged with the tort is not guilty must be maintained.

This was a libel in rem by Thomas Hanson against the steam tug Meta to recover damages for personal injuries.

Foley & Wray, for libelant.
Carpenter & Park, for claimant.

THOMAS, District Judge. The libelant, the master of the barge Kaiser, lying between piers 18 and 19, East river, New York, with her bow towards the bulkhead, was on May 1, 1893, as he claims, injured by the tug Meta. The Kaiser was housed along her full length, excepting a short space on the bow and stern. There was a rail or string piece, about six inches wide, on the outside of the house, around the vessel, and about even with her deck. A large ship was lying alongside the dock on the upper side of the slip, with her stern near the end of the pier, occupying the dock for nearly its

whole length; and against this ship the Kaiser was lying. On the lower side of the slip were one or more vessels, and among them the scow Middlesex, which was attempting to get out of the slip, and in this attempt swung one end up against the side of the Kaiser, while the other end was lying against a vessel at the lower side of the slip. The steam tug Meta, passing along the East river, was called by the libelant to tow the Kaiser out of the slip, and take her to her destination. The tug came alongside of the port quarter of the barge as she lay in the slip, and made her towing line fast to a cleat on the Kaiser's port quarter. This cleat was about 11 feet from the Kaiser's stern, and the towing line passed around the corner of the Pennsylvania scow, there being about 15 feet between the cleat and the tugboat's niggerhead, to which the line was made fast. Thereupon the tug started to back out, pulling the Kaiser from the slip, but shortly a loose and projecting guard iron on the side of the Kaiser's port rail struck the corner of the Middlesex, preventing, for the moment, any further operation. Thereupon the tug stopped, slackened its line, and the tug's stem was brought up to within three feet of the Kaiser's side. The libelant claims that thereupon he left the stern of the Kaiser, where he had been standing, while the tug was pulling, and went out on the guard rail to disengage the corner of the scow from the side of the barge; that when he reached this point he held on to the hand rail along the top of the house with his right hand, having his back towards the tug, and with his left hand pushed on the scow, in an attempt to swing her back, and allow the Kaiser to pass by her; that while so engaged, and without any warning to him, the tugboat pushed her bow in between the scow and the barge in such a way as to shove the scow away from the Kaiser's side, and at the same time struck the libelant on the right foot, either with the niggerhead of the tug or the fender on the tug, in such a way as to press his ankle against the side of the Kaiser's house, and thereby fracture the bone in his right leg near the joint. That the libelant's leg was broken at this time is beyond doubt, but the burden is upon him to establish that it was broken in substantially the manner described by him, by the fault of the tug. Although there is corroborative evidence that the libelant was engaged in somewhat the manner described by him, yet no one observed the alleged collision from which the injury is claimed to have arisen. On the part of the tug it is claimed that she came forward and pressed her stem against the side of the barge, but that the libelant was not in the vicinity of contact, and that she did not force her stem between the barge and the Middlesex in the way claimed by the libelant; and her evidence is quite as credible as that of the libelant on this issue. It must be remembered that the libelant has the burden of proof, and the object of such proof is to carry conviction to the mind of the court that the right of one person has been invaded by the fault of another. Such a conviction does not result in the present case. While there is no question of an injury, there is decided doubt as to the manner of its happening, and such doubt is by no means favorable to the libelant. Where the evidence is left in such condition that the court can give no logical reason for determining

the issue in favor of the libelant, it is just that the presumption that the person charged with tort is not guilty should be maintained. It must be confessed that the explanation given as to the manner in which the tug would naturally detach the barge from the Middlesex, as presented by the libelant's advocate, seems the more plausible, although the captain of the tug strenuously asserts that such a course was not necessary, and was not employed, in the present instance. Did the question turn upon which method was the more suitable to loose the barge, there would be no hesitation on the part of the court in determining in favor of the libelant; but the quality and strength of the evidence as to what was actually done are at least as favorable to the claimant as the libelant, and, in view of the burden that rests upon the libelant to make definite his right to recover, it is considered that the decree should be in favor of the claimant. Let such a decree be entered, with costs to the claimant.

## WEISS v. BETHLEHEM IRON CO.

(Circuit Court of Appeals, Third Circuit.  June 13, 1898.)

### No. 7.

1. TRIAL—MISLEADING INSTRUCTIONS.
Instructions which, taken as a whole, are calculated to mislead the jury as to the character of the evidence necessary to prove the issue on one side, are erroneous.

2. SAME—FAILURE TO SUBMIT MATERIAL EVIDENCE.
Reversible error exists if the general effect of a charge tends to withdraw from the consideration of the jury material evidence, or fails to present with sufficient distinctness a material fact which may have a controlling effect.

3. SAME.
It is error for the court to submit the evidence and theory of one party prominently and fully to the jury, and not call their attention to the main points of the opposite party's case.

4. MASTER AND SERVANT—PRIVATE RAILWAY—EMPLOYE CROSSING TRACK.
The rule requiring a traveler on a highway to stop, look, and listen before crossing a railroad track, is not the criterion by which to determine the degree of care required by an employé about to cross a private railway operated as part of his employer's rolling-mill plant. In such case the employer is bound not to expose its servant, conducting its business, to unnecessary peril against which it might have guarded with reasonable diligence; and the servant has a right to assume that his employer will not subject him to needless danger. The servant is therefore bound only to observe reasonable care to avoid danger which is obvious, or which is known to him, or of which he might have acquired knowledge by the exercise of proper attention.
Dallas, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Geo. Demming and M. Hampton Todd, for plaintiff in error.
John G. Johnson, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and BRADFORD, District Judge.