## THE BARON INNERDALE.

(District Court, E. D. New York. April 6, 1899.)

NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

> In an action by a stevedore to recover for personal injuries received while assisting to discharge a vessel, and caused by the breaking of an iron hook furnished by the vessel and used by libelant and his fellow servants, on the ground that such hook was of poor material and had been previously partly broken, the burden rests upon the libelant to prove that the respondent was negligent in the selection of the hook or in failing to keep it in fit condition, and such burden must be sustained by evidence sufficiently clear, distinct, and preponderating to enable the court to find such fact without resort to conjectures or surmises as to the cause of the breakage.

This was a libel by Eduardo Capitano against the steamship Baron Innerdale to recover damages for a personal injury, on the ground of negligence.

Richard A. Rendich, for libelant.

Convers & Kirlin, for claimant.

THOMAS, District Judge. This accident happened on the 17th day of October, 1898. The libelant was one of several stevedores engaged in unloading the steamer Baron Innerdale, through the bunker hatch. The libelant's immediate duty was attendance upon the winch near such hatch at which the lift was operated, which was attached to a boom, used as a derrick, fitted in a gooseneck, and suspended with a 1½-inch wire rope running forward to the mainmast, and a similar rope on each side fastened to the boom by sister hooks, made of one-half inch wrought iron, which were clamped on to the derrick. At the time of the accident the stevedores were lifting baskets of sugar

from the between-decks; two baskets, each weighing 750 or 800 pounds, constituting a single haul. The libelant's evidence tends to show that as a haul was coming up through the hatch, and after it had cleared all possible obstructions, one of the side lines gave way, by reason of the breaking of one of the hooks, and the boom, thus released, swung to the opposite side, striking the libelant, and shoving him against the house, whereby he received injury.

Under the contract, it was probably the duty of the ship to furnish the hooks. In any case, it did furnish such hooks, and there is no evidence as to the cause of the breaking, except that the libelant claims that the iron was of a very inferior quality, and that there was a small crack in each arm of the hook which caused it to break. Knowledge of this break is predicated upon the statement of witnesses that a small portion of each face of the broken surface was rusted, and that some 10 or 12 days after the accident an inspection of such broken surface showed that it was rusted unevenly. The burden of proving that the shipowner did not use ordinary care in the selection and maintenance of the hooks is upon the libelant. The evidence produced to fulfill that burden must be sufficiently clear, distinct, and preponderating to convince the court, without resort to conjectures or surmises, that the claimant was negligent. When, after a careful study and consideration of the case, a judge cannot state candidly that his reason is convinced by the weight of evidence that the respondent, in some particular pointed out, has negligently done, or omitted to do, some act, in breach of his duty, the libelant has not fulfilled the burden resting upon him. Courts are required to examine, compare, analyze, infer, weigh, and strike the balance of probabilities; but they are not required to hazard opinions that a person has done wrong, without the presentation of intelligible and substantiated facts which tend to establish the accusation. A question of fact may be refined to such a degree that an accurate solution is beyond any reliable intellectual process. At such point of mystification, the court is justified in holding that the libelant has not sustained the burden of proof; that the domain of reasoning has been passed, and that of pure surmise entered.

In the present case, several persons state (1) that the iron of which the hooks are made is of a very inferior quality; (2) that the edge and face of the break show evidences of a water crack, old break, or other imperfect condition, of which the claimant should have known. These witnesses are practical workmen, and apparently honest, and their opinions carry weight, and might carry conviction, did not Mancor, Dickey, and Townsend, on the part of the claimant, testify that there was not the slightest evidence of what the former witnesses stated. These witnesses are not only practical men, but are obviously men of superior education and opportunities. In any case, there is nothing that justifies the court in preferring the libelant's witnesses.

But there is another phase of the case more perplexing. It is perfectly obvious that the proper office of the hooks did not require them to bear any considerable strain. If the sugar was properly handled, and not allowed to catch, the lateral strain on the hook would be nothing, or very slight, as the chief strain would fall on the support-

ing wire rope running from the boom to the mast. Why should hooks of any fair strength, much the more hooks like these, which, even if of the inferior quality stated by the libelant's witnesses, should be capable of bearing large burdens, break, in the absence of any considerable lateral strain? Let the argument be systematically stated: (1) The hooks, if in reasonably good condition, would bear a strain of at least 2,000 pounds. (2) The hooks were used to resist lateral strain, and, if the draft were handled properly by the libelant's co-servants, such strain would be little or nothing. (3) The hook broke as a draft was being hauled from the hold, and the libelant's evidence, of which there is no contradiction in terms, is that the particular draft did not catch and was not otherwise interfered with. (4) There is no preponderating evidence that the hook was defective.

It will be observed that there are two possible causes presented for the breaking of the hook,—one a defective condition, and for this the respondent would be liable if such condition resulted from his negligence; the other, the negligence of the libelant's fellow servants in handling the draft. But there is no preponderating evidence in the first case, with the burden of proof upon the libelant, and there is direct and uncontradicted evidence in the second case negativing the cause. This seems to be a puzzling condition, but the embarrassment is only apparent. The respondent is not liable, unless his negligence be proved. Such proof requires a preponderance of evidence, and such evidence is absent. In such case, it is not necessary for the respondent to point out the cause, nor to disprove the attempted exculpation of another person, who had the power and opportunity to be the wrongdoer. If the exculpation of those working the draft be accepted, the respondent is not proved guilty by the doctrine of exclusion. This is so, because (1) it does not appear certainly that all other causes are excluded, as, for instance, a previous draft catching may have caused the breakage; and (2) because by reversing the argument, and starting with the premises that there is no preponderating evidence that the break resulted from the respondent's negligence, if the doctrine of exclusion were applicable, it could be inferred that the hook was broken by those handling the draft, in such way as to allow it to catch. It is well known that drafts often catch on the coamings of the hatch, with disastrous results to the lifting apparatus, and were this not denied, and were the matter left to conjecture, a hindrance of that nature, resulting in a sudden and powerful lateral strain on the boom, could be conjectured. The surmise would be unjustified in either case. It was suggested on the argument that the breaking of the hook raises a presumption of negligence. There is some authority for such contention, but it is not sustainable in reason or by general authority. It invokes the doctrine of res ipsa loquitur, which is quite inapplicable to this class of cases. There is, however, one practical and well-assured reason for believing that the hooks were in good condition at the inception of the work. They had been used to load the ship in Java, and at the very time of discharge 450 bags of sugar had already been taken from the hold before the accident occurred. Each bag lifted of this number attested the strength and proper condition of the hooks, and is vigorous, palpable proof that they were not defective. The libel should be dismissed.