## THE DIAMOND. THE INDIANA. DEMARIA v. COMPAGNIE GÉNÉRALE TRANSATLANTIQUE.

(Circuit Court of Appeals, Ninth Circuit. October 11, 1926.)

No. 4806.

**1. Collision ⊗⟲81.**

Under International Rule, art. 15, and Comp. St. § 8277, motor-driven fishing boat *held* responsible for collision because of failure to have fog horn sounded by mechanical means

**2. Collision ⊗⟲85.**

Evidence *held* to show that steamship colliding with gas boat during fog was observing all reasonable precaution.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California.

Libel by Peter Demaria, as owner and master of the gas boat Diamond, against the Compagnie Générale Transatlantique, claimant of the steamship Indiana, her engines, boilers, tackle, apparel, furniture, etc. Decree for claimant, and libelant appeals. Affirmed.

Harold M. Sawyer and Alfred T. Cluff, both of San Francisco, Cal. (Daniel W. Evans, of San Francisco, Cal., of counsel), for appellant.

Ira S. Lillick, of San Francisco, Cal. (Chalmers G. Graham, of San Francisco, Cal., of counsel), for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. The suit arose out of a collision between the Diamond and the Indiana on the evening of April 13, 1925, in a calm sea about 22 miles south of San Pedro, Cal. The collision resulted in the sinking of the Diamond, with loss of supplies, equipment, and personal effects of appellant and the crew.

The Diamond was a gas screw fishing boat, 72 feet long, 17 feet beam, and carried a crew of nine men. The Indiana is a steamer over 420 feet long. At the time of the collision, the Indiana was proceeding northerly along the coast of California. Her cargo consisted of approximately 6,500 tons. About 6:40 p. m., while in a calm sea in a dense fog, and as darkness was approaching, the engines of the Diamond became overheated, whereupon the boat was stopped in order to make the necessary repairs. While she was drifting and about 20 minutes after she was stopped, the vessels collided; the Indiana striking the Diamond on the starboard side and so injuring her that she sank in a few minutes.

Each vessel endeavored to put the fault of collision solely upon the other. The Diamond contended that she was careful in all respects, but that the Indiana failed to give fog signals or to maintain proper watch, and that her speed was excessive. The Indiana denied any fault on her part, and alleged that she was proceeding at a moderate speed, that the collision was due solely to the fault and negligence of the Diamond, in that she was not blowing regulation or any fog signals as required, and was not displaying regulation lights and signals required by law, and did not have on watch proper and competent officers or crew attending to their duties.

There was no little variation in the testimony, but we gather that at the time of the collision the only lights carried by the Diamond was green and red side lights, a stern and a masthead light. While it is not clear whether these light were turned on for any time before the collision, or were turned on the instant after the Indiana came in sight, it is evident that at the time of the collision the only lights displayed by the Diamond were those just specified. The Diamond was equipped with a Deisel engine, and had a whistle blown by air instead of steam. When the engine stopped at 6:40 there was no air available for an automatic fog signal. In that situation it was necessary to use a tin mouth horn about two feet long. Witnesses for the Diamond testified that the mouth horn was blown very frequently just before and at the time of the collision. In behalf of the Diamond there was testimony that the man on watch from 5 to 6:40 p. m. stood directly in front of the pilot house, where at times he pulled a whistle cord, which hung down from the pilot house. As the pilot house was approximately 30 feet back from the stem of the vessel, the witness must have been 30 feet back of the stem. That he was in such position is inferable from the testimony of a member of the crew, who said that about 15 or 20 minutes after the engine stopped he remembered that a man took a fog horn and ran to the forecastle head and blew two short blasts. The witnesses for the Diamond also said that the fog was very dense, and that the first intimation they had of the approach of the Indiana was when they heard the swish of the water across her bow and saw her approaching about 120 feet away forcing up bow waves from 4 to 6 feet high, whereupon a warning was shouted, and the collision followed almost immediately.

Turning to the conduct of the Indiana, the evidence is that at about 6 p. m. on the evening of the collision the captain, a mariner of long experience, went to the bridge and remained there with an officer and one man on watch; that the man referred to was on the port side of the bridge; that the officer was moving to and fro; that at about 6:20 the ship ran into denser fog and in addition to the man on the bridge another watch was placed on the forecastle head; that it was still daylight, and that the master could see lights other than his own; that the fog whistle was blown approximately every minute; that about 6:30 the fog became more dense; that about 6:35 the master heard a whistle in front, but not close to the Indiana; that he stopped his engines and blew fog signals every half minute; that the whistle heard was repeated for 10 or 12 minutes and then was lost; that at 6:40 the engines were started again slow speed ahead, increasing from 3 to 5 knots, the signal blowing every minute; that no lights were seen ahead and no signal was heard; that the ship continued to run at from 3 to 5 knots for about 10 minutes, when suddenly and close to the Indiana the master saw a white light on the port side front, and almost immediately thereafter saw a green light to the right of the white light; that the master gave orders full speed astern; that the lights when first seen were approximately 30 or 35 meters in front of the stem of the Indiana; that within 10 or 15 seconds thereafter the collision occurred. The man on watch at the forecastle head, and who was on duty at the time of the collision, said that he heard and reported the whistle of a vessel ahead of him some time after he went on watch; that the whistle continued for about 10 minutes and then passed aft of the Indiana; that he heard whistles of the Indiana continuously while he was on watch, but saw no lights of any vessel until the Indiana was about 30 or 40 meters from the Diamond.

[1] Article 15 of the International Rules requires steam vessels to be provided with an

efficient whistle or siren, sounded by steam or by some substitute for steam, so placed that the sound may not be intercepted by any obstruction, and with an efficient fog horn to be sounded by mechanical means, and also with an efficient bell. The rule is mandatory, and the Diamond was clearly at fault in not being provided with a fog horn sounded by mechanical means. The suggestion that the rule does not apply to the Diamond, a vessel driven by motor rather than steam, cannot prevail. The Motor Boat Act of June 9, 1910 (U. S. Comp. St. § 8277), is applicable to vessels propelled by machinery and not more than 65 feet in length. It is therefore impossible for her to escape responsibility for the failure to have an efficient fog horn sounded by mechanical means. The tin mouth horn was not sufficient.

In The Catalonia (D. C.) 43 F. 396, Judge Nelson rejected the argument that the human lungs are an equivalent for the bellows, and held that neglecting to sound the regulation fog horn in a fog is a fault, unless it is shown with certainty that the omission could not have caused the collision. The Bolivia, 49 F. 169, 1 C. C. A. 221.

In The Steamship Martello, 153 U. S. 64, 14 S. Ct. 723, 38 L. Ed. 637, the court said: "Can it be said in this case that the absence of a mechanical fog horn could not by any possibility have contributed to the collision? We think not. Upon the contrary it seems to us not improbable that it did. It is apparent that the reason the regulations prescribed a horn blown by mechanical means is that a louder and more prolonged blast can be blown by that method than by the power of the lungs."

[2] The strong impression made by the evidence is that, if the Diamond had been equipped with a mechanical fog horn and it had been used, or that if her whistle had been sounded prior to the collision, in all probability the Indiana would have heard the signals and the collision would have been avoided.

It is difficult to arrive at a very satisfactory conclusion as to the speed of the Indiana at the time of the collision, but we agree with the District Court that her speed was not excessive. It is certain that at 6:35 her engines were stopped for 5 minutes. The engineer testified at about 6:20 half speed was ordered; that about 6:30 he was ordered to stop the engine; that about 6:40 slow speed ahead was ordered and about 6:50 full speed astern. He further testified that at full speed the number of revolutions was from 60 to 64; at half speed about 50, and at slow speed,

from 30 to 35. The deduction is that at slow speed the ship was moving from 4 to 5 knots an hour. Such speed was not violative of article XVI of the International Rules, which provide that every vessel shall in a fog go at a moderate speed, having careful regard for the existing circumstances. Counsel for appellant have cited cases where the courts have followed the so-called rule of sight which is often applied where a vessel has known of the presence of another ship either by sight or sound, and has proceeded at such a speed as not to be able to stop and avoid collision with such known ship. In the present case, however, the Indiana did not know of the presence of the Diamond until the lights of the Diamond were seen just before the collision. The decisions, generally citing Judge Brown's opinion in The Normandie (D. C.) 43 F. 151, establish that the question of what is moderate speed is largely one of circumstances to be applied with relation to the density of the fog, place of navigation, probability of the presence of other ships, state of the weather as it may affect the power to hear signals of other ships within a reasonable distance, full speed of the ship, and other circumstances bearing upon danger of the situation. The Beaver, 253 F. 312, 165 C. C. A. 94; Knight on Modern Seamanship, p. 254.

Our conclusion is that the Indiana observed all reasonable precaution, and, as already said, if the Diamond had been equipped with and had used a mechanical fog horn, a sound probably would have been heard beyond the scope of the visibility of the lights she carried, and the collision probably would have been averted.

The decree is affirmed.