## CONDINO v. UNITED STATES et al.

### No. 17893.

District Court, E. D. New York.

Oct. 7, 1947.

George Green, of New York City, Harry S. Austin, of counsel, of New York City, for libellant.

J. Vincent Keogh, U. S. Atty., of New York City, (Kirlin, Campbell, Hickox & Keating, of New York City, of counsel), for respondent United States.

Kirlin, Campbell, Hickox & Keating, of New York City, (Walter X. Connor, and Samuel L. Albarino, both of New York City, of counsel), for respondent American South African Lines, Inc.

John P. Smith, of New York City, (Albert S. Commette, of New York City, of counsel), for respondent-impleaded.

GALSTON, District Judge.

The libellant, a longshoreman, having sustained personal injuries while working aboard the SS Moses Brown, a vessel which was owned by the United States, seeks recovery on the ground that it was the negligence of the respondents which brought about the accident. The American South African Lines, Inc., named as one of the respondents, was the operating agent, but the libellant admits that the operating agent, under the authority of Caldarola v. Eckert, 67 S.Ct. 1569 is not liable.

The respondent-impleaded, a stevedoring company, was the libellant's employer.

The accident happened while the libellant was unloading bags of coffee which had been stowed in the vessel.

There is some contradiction in the testimony regarding the manner in which the bags had been stacked. Calandra, the son-in-law of the libellant, said that the bags were stacked one on top of the other, with no overlap. He also said that there was no dunnage used in connection with the stacking. Bueti, another longshoreman who worked in the same hatch, also testified that the bags did not tie in or overlap one another at any point. Another one of the longshoremen, Pavia, who was working with Bueti, said nothing about the manner of stowage. It may be remarked that these longshoremen, in handling the bags, worked in pairs, the libellant and his son-in-law forming one such pair. The libellant himself said that the bags were stacked one on top of the other, running fore and aft. So also said the hatch boss, and he added that this was the usual method of stowing coffee bags. Polk, chief officer of the ship, said that the bags were tiered athwart ship in the manner in which bricks are laid; but his testimony on this point is not so convincing as that of the men who were working in the hatch and who had agreed in respect to the manner of stacking the bags. Polk, on the other hand, was not present during the entire time that the coffee was being loaded, as he had other duties, and his inspection was but routine.

An expert witness, Captain Cocks, a ship and cargo surveyor, testified that the usual and customary stowage of coffee bags on vessels where the stowage space is fully occupied, as it was in this case, is for the bags to lie in the fore and aft direction, tier over tier, one bag on top of another. He said that there was no cross tie in general stowage and that it is not customary to use dunnage where the bags are laid one on top of the other. Also to be noted is the testimony that no complaint was made with regard to either stowage or tiering or listing by the stevedoring company; nor were any complaints made to the stevedoring boss by any of the longshoremen.

Thus it appears that the libellant has not, by a fair preponderance of the evidence, or indeed by any convincing evidence, proved that the method of stowage employed was improper. Moreover, there is no proof that the cargo was in a different or unsafe condition after loading at the point of origin. Nor is there any proof of any listing, except that Calandra testified that the vessel listed two or three feet toward the pier on the morning of the day of the accident. When that first occurred does not appear from the record. Bueti also testified that the ship listed toward the dock on that day and remained so for three or four days. Contradicting them is the testimony of Jenkins, the engineer of the vessel, who said there was no list. Polk testified there was no list, as also did Teel, the night mate. The hatch boss said there was no list. Finally Captain Cocks said that such a list as had been testified to by Calandra and Bueti would not have caused the bags to fall.

So it cannot be concluded that any act of negligence, either of the respondent or of the respondent-impleaded, was the cause of the accident. See The Baron Innerdale, D.C., 93 F. 492; Doll v. Scott Paper Co. et al., 3 Cir. 91 F.2d 860. On the other hand, we have some indication that perhaps the manner in which Calandra and the libellant removed their bags of coffee, leaving three tiers of eight bags high standing without lateral support, was itself the cause of the accident. In other words, the support for the bags which fell on libellant had been removed by the libellant himself, an experienced stevedore who had worked in coffee cargo ships for many years.

The libel will be dismissed.

Concurrently with this opinion appropriate findings of fact and conclusions of law will be filed.