**GRAHAM et al. v. STANDARD WHOLE-SALE PHOSPHATE & ACID WORKS, Inc. et al.**

**THE M. L. SYLVIA.**

**THE STANCO ACID NO. 4.**

**THE BLANCHE T. ROGERS.**

**No. 6055.**

United States Court of Appeals
Fourth Circuit.

Argued March 9, 1950.

Decided April 5, 1950.

---

Stevenson Masson, Baltimore, Md. (Robert G. Kelly, Philadelphia, Pa., on the brief), for appellants.

John H. Skeen, Baltimore, Md. (Frank Skeen & Oppenheimer and John H. Skeen, Jr., Baltimore, Md., on the brief) for appellees Harbor Towing Corporation and Diesel Tug Blanche T. Rogers.

George W. P. Whip, Baltimore, Md. (Lord, Whip & Coughlan, Baltimore, Md., on the brief), for appellees Standard Wholesale Phosphate & Acid Works, Inc., Standard Liquidating Corporation and Mathieson Chemical Corporation.

Before SOPER and DOBIE, Circuit Judges, and HUTCHESON, District Judge.

SOPER, Circuit Judge.

This case arose out of a collision which occurred on May 13, 1948, in the Delaware River at a point opposite Edgemoor, Delaware, between the tank barge Stanco Acid No. 4, while in tow of the diesel tug Blanche T. Rogers, and the motor barge M. L. Sylvia. As a result of the collision the tank barge was sunk and its cargo of 1700 tons of sulfuric acid is alleged to have become a total loss. The owners of the tank barge and its cargo filed a libel against the barge Sylvia and the tug Blanche T. Rogers and its owner to recover damage on account of the sinking of the tank barge and the loss of its cargo. The District Court found that the damages sustained were due solely to the fault of The Sylvia; dismissed the libel as to the tug Blanche T. Rogers and her owner; and decreed that the libelant recover from Warren L. Graham and Elizabeth H. Graham, owners and claimants of the Sylvia, the damages sustained as a result of the collision, the exact amount of which to be ascertained and fixed by agreement or otherwise pending the entry of a final decree.

The facts shown by substantial evidence may be summarized as follows: At about four o'clock on the morning in question, the tug, with the barge, was proceeding north on their righthand side of the channel in the Delaware River at a point just south of Edgemoor, Delaware, where the channel is about 900 feet wide. The tug was 81 feet in length, 24 feet beam, and the barge was of steel construction, approximately 200 feet long and had a beam of 35 feet. The barge was made fast to the starboard side of the tug and because of its greater length extended beyond the tug's bow. It was still dark with a light rain but otherwise there were no adverse weather conditions and the visibility was good. Both the tug and the barge had proper lights as required by law and they were functioning properly at the time of the collision. They were moving with the tide at a speed of approximately 6 to 7 miles per hour, and just prior

to reaching the red flashing buoy No. 2-B, The Sylvia, a twin screw diesel motor barge 174 feet long, 32 feet beam, was observed proceeding south on her own right hand side of the channel with her forward white light and her red and green lights showing.

When the tug and tow came abreast of the buoy, the tug sounded one blast of her whistle to indicate a port-to-port passing. At that time the Sylvia was about one-half mile distant from the flotilla. She did not answer the signal as required by the navigation rules but continued on her course on her side of the channel so that her green light was shut out. The captain of the tug did not sound a second passing signal when the Sylvia failed to respond to his first signal, because there was ample room for a safe passing port-to-port and he had no reason to expect that the Sylvia would change her course. Shortly afterwards, however, she suddenly altered her course sharply to port, headed across the channel and collided with the barge, her stem striking the port bow of the barge 6' aft of the stem and causing the barge to sink. The master of the tug put his wheel hard to starboard and his engines full speed astern as soon as he perceived the green light of the Sylvia, but it was too late.

It is not disputed that as the Sylvia approached the point of collision, her navigators became confused by the lights ahead, some of which were not the lights on the tug and barge but were shore lights or lights on other vessels. The Sylvia had no lookout at the bow and her navigators were stationed in the pilot house which was located near the stern of the vessel. In order that they might determine the character of the lights and fix the position of the vessel, her engines were stopped. Her version of the accident is that at this juncture while she was still moving forward under her headway her mate noted white lights which seemed to indicate a vessel moving across her bow toward the west bank of the river, then turning immediately to the east bank and showing her red lights, and that at this moment the collision occurred, although the mate put his engine full speed astern,

his wheel hard left, and blew a port-to-port passing and a danger signal.

It is true that it was the purpose of the master of the tug to cross the river and dock at a pier in this locality after passing the Sylvia; but he testified that he had not begun to change his course when the collision occurred. The District Judge accepted this testimony and rejected the explanation offered on behalf of The Sylvia on what seems to us the weight of the credible evidence. The judge held that although it was the better part of caution for The Sylvia to cut off her power when she was confused as to what lay ahead, it was negligent for her not to have immediately reversed her engines and sounded her danger signals in accordance with the Inland Rules, and that if this had been done, it would have been the duty of the tug to indicate her intention clearly by repeating her one blast signal or by giving a danger signal.

■ Since negligence on the part of The Sylvia was of necessity conceded, the principal question on this appeal is whether the collision was caused solely by her neglect or was due to the concurring negligence of both vessels. The judge was of the opinion that the tug should have repeated the passing signal when The Sylvia failed to give a prompt response, but that this was a trivial default as compared with the glaring negligence of The Sylvia. He applied the settled rule that where the fault of one vessel is clearly established, the evidence of the other vessel's fault must be clear and convincing in order to make out a case for apportionment of damage. The Ambridge, 4 Cir., 42 F.2d 971, 976 and cases cited. We are in accord with this conclusion, not only because no contributing fault on the part of the tug has been shown, but also it does not appear that the tug was in fault in not repeating her signal. The Inland Rules require, when steam vessels are approaching another, end on or nearly so, that it will be the duty of the vessels to pass port-to-port and either vessel shall give a blast of her whistle which the other vessel shall answer promptly by a similar blast; but the rules do not require a repetition of the signal when there is no response, unless

either vessel is in doubt as to the course or intention of the other. Article 18, Rules I and III, Inland Rules, 33 U.S.C.A. § 203. If the proposed passage was plainly impracticable, danger signals should be given. The San Simeon, 2 Cir., 63 F.2d 798, 801. The evidence in this case does not indicate that the navigator of the tug was in doubt or had reasonable cause to be in doubt as to the course or intention of The Sylvia until the collision was imminent.

The appellants make the second point that the sinking of the towed barge was partly attributable to her unseaworthy construction and that therefore she should be made to contribute to the loss. There was no finding on this point in the court below and we find no jurisdiction for the contention in the record.

Affirmed.