**MAYS v. THE ELEANOR MARIE et al.
THE ALCLAMAX.**

No. 328.

United States District Court
E. D. North Carolina, Wilmington Division.

March 1, 1952.

George Rountree, Jr., Wilmington, N. C., for libelant.

Frink & Herring, Southport, N. C., for respondents.

272

GILLIAM, District Judge.

This cause arose out of a collision between the libelant's yacht, Alclamax, and the respondents' fishing vessel, Eleanor Marie. The scene of the collision was on inland waters, Long Island Sound, at the red nun buoy No. 2 one mile off Point Judith.

On August 7, 1949, The Alclamax took a departure from bell buoy No. 1 1½ miles north of Sandy Point about 12:15 P.M., its destination being East Greenwich. A heavy fog had set in and visibility was very poor. A course of 056 was taken for the whistle buoy off Point Judith; and from there it was intended that the yacht follow a course of 055 to Brenton Reef Lightship.

The Eleanor Marie, loaded with fish, had left Newport and was enroute to Point Judith, presumably taking her course south from Brenton Reef Lightship with an intention to change course at the Point Judith whistle buoy.

The construction and equipment of the vessel were as follows: The Alclamax, a cruising houseboat or yacht; 55 feet in length with a 14 foot beam, a depth of 4½ feet, and with a distance of 12 feet from the pilot house to the stem; power was provided by twin gasoline Lothrop engines developing a normal cruising speed of approximately 10 nautical miles per hour; equipped with both air and electric horns; The Eleanor Marie, a menhaden fishing boat; 60 feet in length with a 16 foot, 9 inch beam, and with a depth of 9½ feet; power was provided by a 135 horsepower Caterpillar Diesel engine developing a maximum speed of 8½ knots; equipped with only mouth horn for signals, with no "whistle or other sound producing mechanical appliance", or siren "sounded by steam or some substitute for steam".

As The Alclamax proceeded from bell buoy No. 1 to the whistle buoy, a distance of approximately 6.8 knots, it encountered fog of varying density, thereby necessitating variations in speed. Consequently, precise navigation was difficult. About 1:30 P.M. The Alclamax ran out its allotted time on the course as charted and the engines were shut off in order that those aboard might pick up the sound of the whistle buoy. With the engines off the whistle buoy was heard almost immediately, the sound coming from off starboard. Captain Libby, who had been at the wheel of The Alclamax, posted Clarke Mays, Jr., son of the libelant, at the wheel, and took up a lookout position at the stem of the yacht. From the stem Captain Libby pointed in the direction from which the sound of the whistle came while Clarke Mays, Jr. piloted the yacht in the direction as indicated; and within a minute the yacht was alongside the buoy.

After coming alongside the whistle buoy the course of The Alclamax was corrected and a departure was taken on 055 for Brenton Reef Lightship, which course would carry the yacht alongside nun buoy No. 2 floating about 100 yards distant from the whistle buoy.

Within a minute after taking a departure on the new course The Eleanor Marie was sighted off the port bow about 150 feet away, the limit of visibility; and within a matter of seconds the two boats collided. The port side of The Alclamax was struck by the bow of The Eleanor Marie at a point about 6 feet aft of the stem and at an angle of about 45 degrees, the blow being a glancing one which penetrated the deck of The Alclamax only 18 inches and which made a vertical cut of about 2 feet down the side of The Alclamax. Hence, the water-tight integrity of the yacht was not disturbed below the waterline and she was able to continue into port on her own power without shipping water. Damage to The Alclamax amounted to $2,023.34

It is contended by the libelant that The Eleanor Marie was at fault in each of the three respects as follows: (1) Failure to keep a proper and attentive lookout; (2) Proceeding at an immoderate rate of speed contrary to 33 U.S.C.A. § 192; and (3) Failure to carry a proper horn or signaling device as prescribed by 46 U.S.C.A. § 526c.

The burden of proving these contentions rested with the libelant. I am of the opinion that he has failed to offer such proof as regards the first two contentions.

The libelant, himself, as well as his witnesses Captain Libby and Clarke Mays, Jr.,

testified that they observed two men on the bow of The Eleanor Marie as she approached through the fog, and one of these two men was admittedly "way up forward". Further, it was testified by respondents witnesses that The Alclamax was first sighted at a distance of approximately 150 feet, which is the same approximate distance at which The Eleanor Marie was first sighted from aboard The Alclamax. Also, witnesses for the respondent testified that they heard the exhaust from the motors of The Alclamax before they were able to see her, which is indicative that those aboard The Eleanor Marie were listening as well as watching with care.

Libelant's witnesses testified that the speed of The Alclamax was less than three knots at the moment the two boats came within sight of each other; whereas they testified that the speed of The Eleanor Marie was in excess of 6 knots. However, the witnesses for the respondents testified exactly the reverse of those of the libelant regarding the speed of the two boats.

■■ Thus the problem is the familiar one of determining which litigant's evidence is the more worthy of belief; but here, neither camp's evidence outweighs that of the other. All of the witnesses appeared of equal credibility. Therefore, inasmuch as the libelant's evidence has not carried such conviction to the mind of the court as will satisfy the court that the respondents were at fault as contended, it must be concluded that the libelant has failed to carry his burden. "Where the evidence is left in such condition that the court can give no logical reason for determining the issue in favor of the libelant, it is just that the presumption that the person charged with tort is not guilty should be maintained." The Meta, D.C.E.D.N.Y. 1898, 88 F. 21, 22.

■ The third and final contention of the libelant, in my opinion, is meritorious and controlling. It is uncontradicted that the only fog signal being sounded on The Eleanor Marie was by means of a tin horn operated by blowing. Under the Motorboat Act of 1940 as revised, 46 U.S.C.A. § 526c, applicable to vessels of 65 feet long and under, it is provided: "Every motorboat of

class 1, 2, or 3 of section 526a of this title, shall be provided with an efficient whistle or other sound-producing mechanical appliance." Likewise, 33 U.S.C.A. § 155 and 33 U.S.C.A. § 191, when read together, provide in effect that all vessels propelled by machinery shall, when under way in a fog, give signals on a whistle or siren which shall be sounded by steam or by some substitute for steam. Clearly, these code sections do not contemplate the use of a nonmechanical horn sounded by mouth and lungs. The code sections are mandatory, and it appears that liability for the collision here rests with the respondents for failure to comply witth the code. The Diamond, 9 Cir., 1926, 14 F.2d 923.

■ Failure of the respondents to give the statutory signal gives rise to the presumption that such violation was a contributory cause, if not the sole cause, of the collision. Hence, the burden of proof in regard to proximate cause settles upon the respondents, and in order to refute sole liability it is incumbent upon them to establish not merely that their fault might not have been among the moving causes, but rather that such fault could not have been. The Pennsylvania, 1874, 19 Wall, 125, 22. L. Ed. 148; The Ansaldo Savoia, D.C.Va. 1921, 276 F. 719; The Diamond, 9 Cir., 14 F.2d 923. The respondents are not entitled to an apportionment of damages unless some contributory fault on the part of the libelant has been established by clear and convincing proof. Graham v. Standard Wholesale Phosphate & Acid Works, 4 Cir., 1950, 181 F.2d 50; La Flandre, 3 Cir., 1926, 9 F.2d 331.

Can it be said that the respondents here have established some fault on libelant's part by clear and convincing proof? I believe not. And it is more certain that they have not shown that their own statutory violation could not have been among the moving causes of the collision.

As stated earlier, all of the evidence regarding the speeds of the two vessels is directly contradictory, neither camp presenting evidence which in my opinion might be entitled to greater weight than that of the other. The testimony of the captains

274

of each of the two vessels is that each put his own vessel hard to starboard and full speed astern immediately upon seeing the other vessel. The claim of the respondents that The Alclamax was not sounding a fog signal at the time of the collision or immediately prior thereto is likewise contradicted by each of the libelant's witnesses. Further, the fact that The Alclamax was using a horn powered by compressed air, together with the fact that the motors supplying the compressed air were silenced shortly before the collision, do not establish that The Alclamax was lying in the water without giving a signal. For in addition to the air horn, The Alclamax was equipped with an electric horn which was being sounded alternately with the air horn, according to libelant's witnesses.

In conclusion, the fault of the respondents in failing to give the statutory signals establishes liability on their part; and in the absence of clear and convincing proof of libelant's contributory fault, the respondents have not overcome the presumption against apportionment of damages.

A judgment for libelant in amount of $2,023.34, with six percent interest from August 7, 1949, and costs, will be entered.