**In re BALLANTRAE, Inc., et al.**

Civ. No. 452–49.

United States District Court
Third D. New Jersey.

April 23, 1952.

Cruse, Becker & Longstreet, Jersey City, N. J., Mahar & Mason, New York City, and Frank Mason, New York City, for petitioner.

Nathan Baker, Hoboken, N. J., for claimant.

Blair & Blair and Stanley J. Blair, Point Pleasant Beach, N. J., for property claimants.

George Skokos, Asbury Park, N. J., for estate of Andreas Dybdal.

SMITH, District Judge.

This is a proceeding in admiralty initiated by a petition for limitation of liability filed herein pursuant to Section 185 of Title 46 U.S.C., 46 U.S.C.A. § 185. The petitioner, owner of the fishing vessel Ballantrae, seeks exoneration from, or limitation of, liability for damages sustained by the next of kin by reason of the death of two seamen, Waldemar Holm and Andreas Dybdal. Answers · to the said petition and proofs of claim were filed herein by the duly appointed personal representatives of the decedents.

### Facts

#### I.

The decedents, Waldemar Holm and Andreas Dybdal, were employed as seamen on the Ballantrae, a commercial fishing vessel owned by the petitioner. The vessel was manned by a crew of seven men, and was under the command of a captain who, according to the testimony, was a competent seaman of several years' experience.

#### II.

The vessel, rigged for scallop dragging, departed from its home port at Point Pleasant, New Jersey, on December 9, 1948. The vessel was at sea engaged in the usual dragging operations until the early evening of December 15, 1948, when it started toward its home port. The accident hereinafter described occurred on the homeward voyage.

#### III.

The trip was uneventful except for a mishap which occurred a day or two after the vessel left port. While the vessel was engaged in dragging operations, a chock, located between stanchions inside the port rail at a point abreast of the forward end of the pilot house and forward of the scallop box, was pulled out, causing damage to the waist sheathing. The damage was slight and did not substantially impair the sturdiness of the port rail. The witnesses called by the claimants testified that the mishap weakened the port rail, but we are inclined to give very little credence or weight, if any, to their testimony for reasons hereinafter stated.

#### IV.

The vessel approached the entrance to the Manasquan Inlet at approximately half past one on the morning of December 16, 1948. The weather was inclement but not stormy, the sea was choppy but not unusually heavy, and there was a moderate wind. The members of the crew, except the cook, were on deck at·their customary stations; the captain and a deck hand were in the pilot house, and the other crew members were on the port side. The decedents and one Wilson Martin were standing on the after port side of the vessel between the pilot house and the scallop box. Another deck hand, one Gregory Johnson, was stationed forward. The members of the crew were in these relative positions immediately prior to the occurrence hereinafter described.

#### V.

As the vessel entered the inlet Johnson observed a heavy sea off the starboard quarter and moving toward the starboard side, and he then shouted a warning to the other crew members. The sea struck the starboard quarter with such force that the vessel was thrown over on its port side and the decedents and Martin were hurled or washed overboard; Martin saved himself by grasping the after lines and pulling himself aboard. The decedents were drowned and their bodies were recovered shortly after the occurrence. It is conceded that their deaths occurred in the course of their employment.

#### VI.

The claimants herein are entitled to recover, only upon proof: first, that the decedents were washed overboard; second, that a defective port side was either the proximate or contributing cause of the accident; and third, that the petitioner failed to exercise reasonable care in the maintenance of the port side. There must be evidence not only that the port side was in a condition of disrepair but also that this condition was the proximate cause of the

accident. It is our opinion that the claimants have failed to prove by a fair preponderance of evidence that the condition of the port side, even if we assume that it was defective, was the proximate cause of the accident.

## VII.

We are unable to determine from the evidence whether the decedents were hurled over the rail or washed overboard through an opening in the waist sheathing made by the force of the impact. The latter is possible, but the former seems more probable. Any determination of the factual issue, however, would necessarily be based solely upon conjecture; the evidence, viewed in the light most favorable to the claimants, would equally support either possibility, but will not support one and not the other as reasonably probable. It is interesting to note that Martin, the only surviving eyewitness to the actual occurrence, could not describe the manner in which he was thrown into the sea.

## VIII.

It would appear from the evidence that the violence of the wave was sufficient to hurl the decedents over the rail as the vessel was thrown over on its side, especially where, as here, the cap rail was only 24 inches above the deck. The decedents could have been washed overboard only if they passed between the timber heads, which were spaced approximately 18 to 24 inches apart; two pieces of waist sheathing, approximately 10 to 12 feet in length, running aft from a point under the scallop box, were torn from the timber heads and washed away, but the timber heads remained intact. It seems reasonable to assume that the port side structure would have prevented the decedents from being washed overboard notwithstanding the damage to the waist sheathing.

## IX.

The nature and the extent of the damage to the vessel would clearly indicate that the waves struck quickly and with great violence. The after port side of the vessel was damaged extensively; the cap rail was split fore and aft for a distance of approximately 4 to 6 feet and at the point at which the after iron stanchion supporting the scallop box passed through the rail; the rail fastenings were started for a distance of approximately 16 feet, and although the rail was loosened, it remained secured to the timber heads; two pieces of waist sheathing, approximately 10 to 12 feet in length, were torn from the timber heads; the iron stanchions supporting the scallop box were bent outboard at an angle of approximately 30°, and the scallop box was missing. It will be observed that this damage was to the superstructure; the timber heads were not damaged. An idea as to the violence of the wave may also be gathered from the fact that a dory, approximately 14 feet in length and weighing 300 pounds, was completely overturned.

## X.

We are of the further opinion that the credible evidence will not support the contention here made that the port side was in such condition of disrepair as to be unsafe or hazardous prior to the accident. The members of the crew, except Martin, were called as witnesses by the claimants. They testified that the port rail was in serious disrepair for approximately three months prior to December 9, 1948, when the vessel left port; they testified that the port rail was loose and that the timber heads were rotted at the deck level. This testimony was somewhat inconsistent with their frank admission that the vessel was seaworthy. We are inclined to believe that their descriptions of the condition were exaggerated, and for that reason can be given very little credence or weight. It would seem that their testimony was influenced, at least to some degree, not only by friendship but also by a family relationship.

## XI.

There is undisputed testimony that two timber heads on the port side were in disrepair at a point level with the deck and that the cap rail was abraded and covered by a surface of dead wood to a depth of approximately one-third of an inch. We are convinced, however, that these conditions were not such as to render the port side unsafe or hazardous. Neither the

timber heads nor the cap rail collapsed under the violent impact of the wave. It is true that the cap rail split at the point hereinabove described, but an examination made after the accident disclosed that the wood was in good condition, except for the dead wood on the surface, and that the rail was solid, even though its fastenings had started. It is significant that the two timber heads, despite the minor disrepair, withstood, as well as the other timber heads, the violent impact of the wave.

## XII.

The only other damage of any significance was that to the waist of the vessel. There is evidence that two pieces of sheathing broke under the impact of the wave and were washed away. There is no evidence, however, that the waist was either improperly constructed or the sheathing in a serious condition of disrepair. The sheathing consists of one inch planks so fastened to the timber heads, according to the testimony of a marine surveyor called as a witness by the petitioner, as to permit them to "burst out" when the vessel takes a heavy load of water.

## Discussion

The claims herein made by the personal representatives of the decedents must be regarded as claims for death under the Merchant Marine Act, commonly known as the Jones Act, 46 U.S.C.A. § 688. This Act creates a right of action against the employer for the death of a seaman resulting from injuries sustained in the course of his employment. Lindgren v. United States, 281 U.S. 38, 43, 50 S.Ct. 207, 74 L.Ed. 686. This right of action is exclusive and vests in the personal representative of the seaman for the use and benefit of his next of kin. Ibid.

The provisions of the Federal Employers' Liability Act, as amended, 45 U.S.C.A., § 51, are made applicable to suits or claims under the Merchant Marine Act by the express provisions of the latter. Johnson v. United States, 333 U.S. 46, 49, 68 S.Ct. 391, 92 L.Ed. 468; De Zon v. American President Lines, 318 U.S. 660, 665, 63 S. Ct. 814, 87 L.Ed. 1065, and other cases hereinafter cited. The measure of lia-

bility is defined by the Federal Employers' Liability Act, and thus the negligence of the employer is made the gravamen of the action.

The burden is upon the personal representative of the deceased, as either libelant or claimant, to prove by a fair preponderance of evidence not only that the employer was negligent but also that his negligence was the proximate cause, either in whole or in part, of the seaman's injury and death. Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 339, 340, 53 S.Ct. 391, 77 L.Ed. 819; New York Cent. R. Co. v. Ambrose, 280 U.S. 486, 489, 490, 50 S.Ct. 198, 74 L.Ed. 562; Cruse v. Sabine Transp. Co., 5 Cir., 88 F.2d 298, 300, certiorari denied 302 U.S. 701, 58 S.Ct. 20, 82 L.Ed. 541; Kunschman v. United States, 2 Cir., 54 F.2d 987, 989; The Meta, D.C., 88 F. 21, 22, and other cases herein cited. The claimants in this case have failed to sustain this burden.

The litigants are agreed that the port side of the vessel was damaged by the violent impact of the wave which washed over its starboard quarter. The credible evidence before the Court, however, will not support a factual determination that this damage resulted from any defect inherent in the port side structure. The port rail, although damaged, and the timber heads withstood the impact and were found sound after the accident. These facts would seem to indicate that the port side structure was in reasonably safe condition prior to the accident.

The petitioner herein may be held liable only upon proof by a fair preponderance of evidence that the port side rail was defective and unsafe prior to the accident, and that this condition was the proximate cause, either in whole or in part, of the accident which resulted in the death of the seaman. However, even if we assume that the port side rail was in an unsafe condition prior to the accident, the evidence will not support a reasonably probable inference that this condition was the proximate cause, either in whole or in part, of the accident.

The proof as to the proximate cause of the accident rests solely on circumstantial evidence. This evidence, if we assume that

the port side structure was not safe prior to the accident, will equally support either of two inconsistent possibilities: that the decedents were hurled over the rail by the violence of the sea, or were washed overboard through the openings in the waist. The liability of the petitioner may rest only on the latter possibility, and then only if it can be determined: first, that the port rail structure was in such disrepair that the condition was a contributing cause of the damage caused by the impact of the wave, and second, that the decedents were washed overboard because of the damage in the port rail structure; such a determination can be made only by the imposition of an inference upon an inference. We are unable to say what occurred, and any determination as to the proximate cause of the accident would be based upon mere conjecture.

The evidence as to proximate cause, viewed in the light most favorable to the claimants, is so uncertain as to leave the issue in doubt. The evidence is susceptible of two inconsistent inferences, and although one may seem more probable than the other, the uncertainty of the evidence makes it impossible to adopt one and not the other as reasonably probable. When the evidence is in this posture it presents no more than a choice of probabilities and the claimant upon whom the burden of proof rests has failed to sustain this burden. Pennsylvania R. Co. v. Chamberlain; New York Cent. R. Co. v. Ambrose; The Meta, all supra; Patton v. Texas & Pacific Railway Co., 179 U.S. 658, 663, 664, 21 S.Ct. 275, 45 L.Ed. 361; West v. Eastern Transp. Co., 4 Cir., 179 F.2d 478, 479; Somogyi v. Cincinnati, N. O. & T. P. Ry. Co., 6 Cir., 101 F.2d 480, 481; Petition of McAllister, D.C., 53 F.2d 495, 501; The Baron Innerdale, D.C., 93 F. 492, 493. A favorable determination of the issue of proximate cause must rest on a reasonably probable ground and not on speculation. Ibid.

Conclusions

I.

This Court has jurisdiction of claims filed in a proceeding to limit liability initiated pursuant to Section 185 of Title 46 U.S. C., 46 U.S.C.A. § 185. Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903.

II.

The claimants have failed to sustain the burden of proof. A judgment in favor of the petitioner and against the claimants will, therefore, be entered.