## THE BALLANTRAE.

### In re BALLANTRAE, Inc.

### No. 11002.

United States Court of Appeals
Third Circuit.

Argued Oct. 6, 1953.

Decided Nov. 23, 1953.

Nathan Baker, Bernard Chazen, Hoboken, N. J. (George S. Skokos, Asbury Park, N. J., on the brief), for appellants.

Frank C. Mason, New York City (Cruse, Becker & Longstreet, Jersey City, N. J., Mahar & Mason, New York City, on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In this limitation of liability proceeding[1] there was a judgment in the district court in favor of petitioner and against the two remaining claimants. The latter appeal.[2]

The claims arose out of a tragic marine mishap December 16, 1948 at the entrance of Manasquan Inlet on the north New Jersey coast. The commercial fishing vessel Ballantrae had been off shore in the Atlantic dragging for scallops and was returning to port the early morning of the accident. As it was about to enter the inlet a huge wave struck its starboard side causing it to heel over. Three crew members, Waldemar Holm, Andreas Dybdal and Wilson Martin, who had been on the port side deck, were washed overboard. Holm and Dybdal were drowned. The damage claims before us were filed by their representatives.

Appellants allege both negligence and unseaworthiness. The Jones Act, 46 U.S.C.A. § 688, of course authorizes the negligence phase of the action. The theory of recovery for unseaworthiness, having in mind that these are maritime death causes, is contrary to Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686. Appellants argue that Lindgren no longer represents the law to the extent it declares that an action for wrongful death based on unseaworthiness cannot be maintained. The point is academic here and will not be discussed because the trial court with complete justification in the record found that no unseaworthiness existed and further, assuming the existence of unseaworthiness, that it did not proximately cause the accident.

The negligence theory (the unseaworthy claim is identical except for the question of notice) is that at the time of the accident the rail in the area where decedents were standing was in a loose weakened condition and when hit as it was by an admittedly heavy sea broke and gave way. As a result of this, say claimants, Holm and Dybdal were precipitated overboard and lost their lives.

The Ballantrae, originally a yacht, was fifty-nine feet long. Her rail on both sides of the deck, but with particular reference to the port side, was formed by upright wooden stanchions or timberheads (part of the ship's frame) coming out of the sides of the hull and extending above the deck. These were eighteen to twenty-four inches apart. They had been cut off evenly and on top of them was fastened the cap rail which is the form section that goes around the vessel. This consists of oak planks about two inches thick fastened to the stanchions. The

---

1. 46 U.S.C.A. § 181 et seq.

2. Originally there were four claims filed. Two of these (the first involving alleged bulkhead damage and the second for loss of vessel) were withdrawn and discontinued.

distance from the cap rail to the deck was twenty-four inches. In that space there were three groups of boards called sheathing, all following the course of the rail. The board next to the cap rail was a heavy piece. Below it were two lighter boards (waist sheathing) an inch in thickness. The latter were so fastened to the outside of the stanchions as to allow them to burst open in the event a heavy sea was shipped. That action allowed the deck to be quickly cleared of water and thus prevented the vessel from becoming unmanageable. The uncontradicted testimony was that in such a situation if the boards do not free themselves it is customary to knock them out. On each side of the ship were scallop boxes. The box on the port side, about three hundred and twenty pounds in weight, was aft of the pilot house. An eighteen foot dory weighing approximately three hundred pounds was carried on a frame six feet or more above the stern deck.

■ The district judge found as a fact that while as a result of the impact of the wave the rail fastenings were "started" for a distance of about sixteen feet and the rail loosened, "it remained secured to the timberhead". [104 F. Supp. 3.] He also found "two pieces of waist sheathing, approximately 10 to 12 feet in length, were torn from the timberheads". The port scallop box was missing after the occurrence and the pipes supporting it bent. The dory admittedly was turned upside down and its stern damaged. Our study of the testimony reveals overwhelming support for the trial court's holding that the rail did not break or give way. As we have stated, claimants' sole ground for recovery is based on a contrary contention.

■ The trial court did find that the deck and cap rail had some superficial softening of their surfaces from exposure to salt water and scallop juice, from the rough treatment of hauling the scallop chain nets across them and from the stones and other debris brought up by the bottom dragging. There was also a finding that on the critical trip a chock (which in this instance was a six inch wooden block two inches thick) had pulled out, causing slight damage to the port side waist sheathing. The result of this was a small unimportant hole in the sheathing. The court further specifically found that none of these factors were proximately related to the accident. That finding is fully substantiated by the evidence.

■ Appellants urge that since this is an admiralty matter our consideration of the evidence should be de novo. Even so, the findings of the trial court are entitled to great weight and should not be set aside unless shown to be clearly wrong. Read v. United States, 3 Cir., 201 F.2d 758; Bentley v. Albatross S. S. Co., 3 Cir., 203 F.2d 270. That principle applies most strongly in this particular instance where the district judge during a three day trial had the opportunity of observing on the stand all of the factual and expert witnesses.

With the alleged breaking and giving way of the port rail out of the case there remain the alternative possibilities of the decedents having been carried over the rail or washed off the deck through one of the spaces between the cap rail and the deck created by the bursting of the waist sheathing. The space between each two stanchions was at most twenty-four inches by twenty-four inches. As the trial judge found, it would have been possible for the unfortunate Holm and Dybdal to have been swept through one of those openings, but it seems reasonable to assume that the port side structure would have prevented this. In any event there was no proof of such occurrence and in view of the more probable alternative, namely, that the decedents were hurled over the rail by the same powerful sea which completely overturned the three hundred pound dory, we are in agreement with the district court that a judgment in favor of claimants could not fairly be founded on that premise. In

addition appellants did not try the case on this theory and do not now urge it on appeal.

The remaining alternative, that the wave hurled Holm and Dybdal over the cap rail into the water, as we have noted, did seem to the district judge a more probable explanation of the accident than the theory that they had been washed through the burst out sheath space. Again, however, the evidence did not furnish him any sound basis for determining that the accident actually so happened, to the exclusion of the other possibility. Appellants in their brief go along with this to the extent of saying that "[t]o assume that the force of the sea hurdled them some three feet over the scallop box into the sea is not a reasonable inference." We think the trial court correctly held that a factual finding accepting either possibility as the cause of the accident would not have been justified by the evidence and would have been at best speculation.

Appellants' final point, referred to earlier, is that recovery can be had in these death claims for unseaworthiness under general maritime law and the New Jersey Wrongful Death Act, N.J.S.A. 2A:-31–1 to 6. As we have already stated, the lower court in effect not only found that the port side was seaworthy prior to the accident but, assuming it was defective, that such condition was not the proximate cause of the accident. The court said as to this: " * * * the credible evidence will not support the contention here made that the port side was in such condition of disrepair as to be unsafe or hazardous prior to the accident. * * * It is our opinion that the claimants have failed to prove by a fair preponderance of the evidence that the condition of the port side, even if we assume that it was defective, was the proximate cause of the accident." Solid foundation for these findings appears in the record. Therefore appellants' interesting contention is never reached.

The judgment of the district court will be affirmed.